990 P.2d 396 (1999)
139 Wash.2d 678
STATE of Washington, Respondent,
v.
Dwight DAHL, Petitioner.
No. 67173-7.
Supreme Court of Washington, En Banc.
Argued May 25, 1999.
Decided December 23, 1999.
*398 Gregory Charles Link, Washington Appellate Project, Seattle, for Petitioner.
Norm Maleng, King County Prosecutor, Ann Marie Summers, Deputy King County Prosecutor, Seattle, for Respondent.
*397 GUY, C.J.
Dwight Dahl challenges the trial court's order revoking his Special Sex Offender Sentencing Alternative (SSOSA) sentence. Dahl contends that the trial court revocation hearing violated his right to due process. We agree and accordingly direct the trial court to conduct a new hearing to determine whether Dahl violated the terms of his SSOSA sentence.

FACTS
Dahl pleaded guilty to Rape of a Child in the First Degree after confessing to sexually abusing his stepdaughter. The trial court sentenced Dahl to a standard range sentence of 95 months. However, the court suspended all but six months of Dahl's sentence under SSOSA. RCW 9.94A.120(8)(a)(i). The relevant conditions of Dahl's suspended sentence included (1) six months confinement; (2) reasonable progress in sexual deviancy treatment; (3) compliance with treatment conditions; (4) no contact with the victim or minor children; and (5) compliance with conditions recommended by the community corrections officer (CCO).
Dahl was released from prison after serving his six month term. Dahl then began his sexual deviancy treatment with Michael O' Connor and Associates (O'Connor). O'Connor submitted reports to Dahl's CCO detailing Dahl's progress between August 1995 and June 1997.
In the reports, O'Connor observed that Dahl was generally following the court ordered treatment rules, but that Dahl had communication problems and difficulty staying on his anticompulsivity medication. O'Connor noted that Dahl might have a learning disorder that hindered his treatment progress. O'Connor also suspected that Dahl was intentionally sabotaging his polygraph tests, thus making it difficult to monitor his compliance with the program.
On March 13, 1997, the State petitioned to revoke Dahl's suspended sentence. The State notified Dahl of the hearing and informed him that he had violated the terms of his suspended sentence by failing to make reasonable progress in treatment. After the hearing, the court ordered Dahl to serve 30 days' confinement with work release, but did not revoke Dahl's SSOSA sentence. The court scheduled a new review hearing for June 18, 1996, and cautioned Dahl that he must show discernible progress in his treatment during the intervening three-month period in order to maintain his SSOSA.
O'Connor submitted a treatment report on June 10, 1997. O'Connor reported that Dahl had violated work release rules, but stated that "I have no reason to believe that he has crossed the line into serious violations of a criminal or sexually deviancy [sic] nature." Clerk's Papers (CP) at 32. However, O'Connor did mention two incidents that caused him some concern. First, O'Connor reported that Dahl's CCO told O'Connor that two young girls had complained that a man fitting Dahl's description exposed himself to them near the site of Dahl's work release (hereinafter the "exposure incident"). A police officer informed the CCO that the girls identified Dahl from a photo montage as the man who exposed himself to them. However, O'Connor noted that Dahl had shown truthful in a polygraph exam when he had denied exposing himself to the girls.
The second incident occurred when Dahl sent a note to a young bank teller (hereinafter the "note incident"). According to O'Connor, the letter contained specific descriptions of Dahl's sexual offense, his recent fantasies, and his obsession with the JonBenet Ramsey case. Dahl told O'Connor that the letter was an attempt to reach out and develop a friendship with the woman, and Dahl showed truthful in a polygraph exam *399 when he denied hoping to engage in sexual activity with the teller. O'Connor concluded his report by stating that, "[i]n summary, [Dahl] has been making some progress, especially in the area of more disclosure and better reporting about his sexual impulses. However, [Dahl] continues to present a difficult case and one that will require long term treatment and supervision."
On June 18, at the end of the three-month period, Dahl went before the court for the second revocation hearing. In making its decision, the trial court considered O'Connor's treatment reports, the CCO's testimony and report recommending revocation, and a copy of the note Dahl wrote to the bank teller.[1] When the State raised the issue of Dahl's exposure to the two girls, Dahl's attorney objected, arguing that the prosecutor's unsworn statements regarding the incident were hearsay. The court overruled the objection on the grounds that information about the incident was contained in the treatment provider's report, which was itself admissible.
At the conclusion of the hearing, the court revoked Dahl's suspended sentence and reinstated Dahl's original 95-month term of confinement. The judge did not enter specific findings of fact. In her oral ruling, the trial judge noted that Dahl may suffer cognitive and physical impairments that hinder his progress. She observed that Dahl's treatment providers have been unable to ascertain the reasons for his poor performance in treatment. The judge determined that the letter Dahl sent to the bank teller showed that he could be dangerous because he is unable to recognize sexually inappropriate behavior. Although the judge mentioned the exposure incident, she did not address its significance to Dahl's treatment progress. Finally, the judge acknowledged that the result of Dahl's polygraph seemed to indicate that he was not involved in the exposure incident, but she commented that Dahl's past polygraphs had been inaccurate. "[U]nder all those considerations," the court concluded, "I'm going to revoke his SSOSA." Verbatim Report of Proceedings (VRP) at 15-16.
Dahl challenges the trial court's decision on the grounds that it violated his right to due process. Specifically, Dahl contends that the State did not provide him with adequate notice of the alleged violations and that the trial court improperly considered hearsay evidence at the hearing. The Court of Appeals rejected Dahl's arguments and affirmed the revocation of his SSOSA. We granted Dahl's petition for discretionary review.

ANALYSIS
SSOSA provides that a sentencing court may suspend the sentence of a first time sexual offender if the offender is shown to be amenable to treatment. SSOSA requires the offender to be released into community custody and to receive up to three years of outpatient or inpatient sexual deviancy treatment. RCW 9.94A.120(8)(a)(ii)(B). An offender's SSOSA may be revoked at any time if a court is reasonably satisfied that an offender has violated a condition of his suspended sentence or failed to make satisfactory progress in treatment. RCW 9.94A.120(8)(a)(vi); State v. Badger, 64 Wash. App. 904, 908-09, 827 P.2d 318 (1992). Once a SSOSA is revoked, the original sentence is reinstated.
The revocation of a suspended sentence is not a criminal proceeding. State ex rel. Woodhouse v. Dore, 69 Wash.2d 64, 416 P.2d 670 (1966). Accordingly, the due process rights afforded at a revocation hearing are not the same as those afforded at the time of trial. In re Personal Restraint of Boone, 103 Wash.2d 224, 230, 691 P.2d 964 (1984). An offender facing revocation of a suspended sentence has only minimal due process rights. State v. Nelson, 103 Wash.2d 760, 763, 697 P.2d 579 (1985). Sexual offenders who face SSOSA revocation are entitled the same minimal due process rights as those afforded during the revocation of probation or parole. Badger, 64 Wash.App. at 907, 827 P.2d 318.
The United States Supreme Court has determined that, in the context of parole violations, minimal due process entails: (a) *400 written notice of the claimed violations; (b) disclosure to the parolee of the evidence against him; (c) the opportunity to be heard; (d) the right to confront and cross-examine witnesses (unless there is good cause for not allowing confrontation); (e) a neutral and detached hearing body; and (f) a statement by the court as to the evidence relied upon and the reasons for the revocation. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). These requirements exist to ensure that the finding of a violation of a term of a suspended sentence will be based upon verified facts. Id. at 484, 92 S.Ct. 2593.
Dahl argues that the notice provided to him by the State was inadequate because the State cited as grounds for revocation only Dahl's failure to make reasonable progress in treatment. Dahl asserts that the notice should have also listed the exposure and note incidents as independent violations. For purposes of minimal due process, proper notice must set forth all alleged parole violations so that a defendant has the opportunity to marshal the facts in his defense. Morrissey, 408 U.S. at 489, 92 S.Ct. 2593. In this case, Dahl was informed of the State's contention that he had failed to make reasonable progress and was provided with O'Connor's treatment provider reports. Suppl. Br. of Pet'r. at 7. While the exposure and note incidents were discussed in the reports, the State did not inform Dahl that it sought revocation of his SSOSA based on these occurrences. Because the court considered the alleged exposure and note incidents, Dahl asserts that those incidents should have been listed as independent violations in the State's motion to modify the SSOSA.
Dahl's contention that the exposure and the note incidents should have been listed in his notice as independent SSOSA violations is founded upon a mischaracterization of the revocation proceeding. Dahl presumes that the incidents in and of themselves constituted violations that served as grounds for revocation. However, this supposition is not borne out by the record. The two incidents were not raised as independent SSOSA violations, but rather as examples of Dahl's failure to make progress in treatment as required by RCW 9.94A.120(8)(a)(vi). The actions and statements of both the prosecutor and trial judge make clear that the two incidents were never intended to be considered as separate SSOSA violations. Instead, the incidents were taken into account for the purpose of assessing Dahl's overall treatment progress. The entire revocation process focused on Dahl's inability to accomplish the treatment goal of curbing his impulsive behavior.
At the June 18 hearing, the prosecutor did not represent the note and exposure incidents as independent violations of SSOSA. Rather, the State claimed that Dahl had failed to make reasonable progress and supported this contention with myriad examples of his failure. The State argued:
The time period that Your Honor gave Mr. Dahl to actually prove himself since the time of the last hearing should have been a very critical period to Mr. Dahl.... This is a time where one would expect that one would be on the utmost of best behavior....
But what we see instead during this time frame is that Mr. Dahl continues in his deviant practices....
VRP at 5.
The State then discussed both the exposure incident and the note Dahl sent to the bank teller. However, these two incidents were just two of the examples proffered by the State to show Dahl's lack of progress. The two incidents were the most egregious of Dahl's alleged inappropriate behavior, but Dahl's CCO testified at trial that Dahl exhibited other behavioral problems: "there's always been issues with regard to [Dahl's] compliance to the rules and regulations, to his writing in his journal appropriately, letting his therapist know what is happening with him with regards to deviant thoughts and impulses...." VRP at 8. The CCO also stated that she was "kind of appalled" at Dahl's blatant disregard of the work release rules and his inability to account for his whereabouts when he was supposed to be at work through work release. VRP at 9. Just as with the exposure and note incidents, these examples were not presented as specific violations of the conditions of his suspended sentence. Rather, they were mentioned *401 as evidence of Dahl's lack of progress after almost three years of treatment.
Due process requires that the State inform the offender of the specific violations alleged and the facts that the State will rely on to prove those violations. Here, Dahl was informed of the State's contention that he had failed to make reasonable progress in his treatment program. He was also supplied with copies of the treatment provider reports, upon which the State relied to prove Dahl's SSOSA violation. These reports plainly informed Dahl of the facts supporting the allegations against him, including O'Connor's characterization of the exposure and note incidents as cause for "serious concern." CP at 61. Given that the State notified Dahl both of his alleged SSOSA violation and of the facts supporting the State's claim, we hold that the notice provided to Dahl met minimal due process standards.
Dahl next argues that he was denied his due process right to confront the witnesses against him. We agree.
The minimal due process right to confront and cross-examine witnesses is not absolute. Courts have limited the right to confrontation afforded during revocation proceedings by admitting substitutes for live testimony, such as reports, affidavits and documentary evidence. See Nelson, 103 Wash.2d at 764, 697 P.2d 579 (citing United States v. Penn, 721 F.2d 762, 763 (11th Cir. 1983); United States v. Burkhalter, 588 F.2d 604, 607 (8th Cir.1978); United States v. McCallum, 677 F.2d 1024, 1026 (4th Cir. 1982), cert. denied, 459 U.S. 1010, 103 S.Ct. 365, 74 L.Ed.2d 400 (1982)). However, hearsay evidence should be considered only if there is good cause to forgo live testimony. Nelson, 103 Wash.2d at 765, 697 P.2d 579. Good cause is defined in terms of "difficulty and expense of procuring witnesses in combination with `demonstrably reliable' or `clearly reliable' evidence." Id. Dahl asserts that the court considered the hearsay evidence regarding the exposure and note incidents without first determining that good cause existed to do so.
The Court of Appeals rejected Dahl's arguments, and concluded that the trial court properly considered both incidents. State v. Dahl, No. 41017-2-I, 1998 WL 346851 (Wash.Ct.App. Jun.29, 1998). In regard to the exposure incident, the court held that the hearsay evidence was reliable because it was corroborated by other evidence. Specifically, the court noted that the girls identified Dahl from a photo montage, the incident occurred near where Dahl worked, and Dahl was unable to account for his whereabouts at the time.
We disagree with the Court of Appeals' analysis. Although the exposure occurred near where Dahl worked and he could not account for his whereabouts, these facts do not corroborate the veracity of the girls' identification. While this information is relevant, it does not address the issue of whether the girl's identification of Dahl in the photo montage was in some way tainted or erroneous. Without knowing any circumstances surrounding the incident and the girls' statements, the court had no information upon which to base a determination of reliability. The court was never informed of how the identification was made or the circumstances surrounding the presentation of the photo montage. The State never offered the photo montage or the police reports as exhibits. The only information the court had about the event was fourth hand: two girls reported an indecent exposure to a police officer, who informed Dahl's CCO, who told O'Connor, who included the incident in a treatment report. This treatment report was then relied upon by the judge at the revocation proceeding.
Under the good cause standard, the reliability of the hearsay must be considered in light of the difficulty in procuring live witnesses. Here, the State did not show that there was difficulty or expense in obtaining the girls' testimony or sworn affidavits. Nor did the State call the officer who first reported the incident to Dahl's CCO. In short, the court's reliance on O'Connor's references to the exposure incident appears to fail both prongs of the good cause standard: it was neither demonstrably reliable nor necessary, due to the difficulty in procuring live witnesses. We accordingly hold that the trial court abridged Dahl's due process right to *402 confrontation by considering hearsay allegations of the exposure incident without good cause.[2]
We next must address what impact, if any, the court's error had on the validity of the revocation proceeding. Violations of a defendant's minimal due process right to confrontation are subject to harmless error analysis. Badger, 64 Wash.App. at 909, 827 P.2d 318. See State v. Powell, 126 Wash.2d 244, 267, 893 P.2d 615 (1995) ("Reversal is merited when an error, such as improperly admitting hearsay evidence, deprives the defendant of the right to confrontation, unless the error is harmless."); State v. Hieb, 107 Wash.2d 97, 108, 727 P.2d 239 (1986); State v. Dupard, 93 Wash.2d 268, 271, 609 P.2d 961 (1980). In revocation cases, the harm in erroneously admitting hearsay evidence and thus denying the right to confront witnesses is the possibility that the trial court will rely on unverified evidence in revoking a suspended sentence. Boone, 103 Wash.2d at 235, 691 P.2d 964. Morrissey requires that a finding of a parole violation be "based on verified facts and that the [court's] exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." 408 U.S. at 484, 92 S.Ct. 2593. "Unreliable hearsay may not be the sole basis for revocation...." Nelson, 103 Wash.2d at 765, 697 P.2d 579 (emphasis omitted). Dahl's alleged exposure to the two girls was not a verified fact because the court's knowledge of the event came entirely from unreliable hearsay. Thus, the revocation of Dahl's SSOSA sentence was invalid if it was based on the allegations regarding the exposure incident.
The judge's oral ruling does not explain the importance of individual incidents in her decision to revoke Dahl's SSOSA. She stated only that:
I think that his treatment providers have been trying to find out why his treatment is not progressing as they feel it should be and have come up with nothing.
The letter to the bank teller shows that while he may be truthful, he may be dangerous. He doesn't recognize that someone that he had sexual feelings about in the past would not be an appropriate person to be a confidante friend at this time. The exposure to the 13- and 14-year-old girls who identified him in a photo montage, and the evidence in his favor is a polygraph testing, which has been noted before he may not be suitable for; under all those considerations, I'm going to revoke his SSOSA.
VRP at 15-16.
Due process requires that judges articulate the factual basis of the decision. Nelson, 103 Wash.2d at 767, 697 P.2d 579. Where the trial judge fails to do so, the decision is not amenable to judicial review. State v. Lawrence, 28 Wash.App. 435, 439, 624 P.2d 201 (1981). Although oral rulings are permitted, we strongly encourage judges to explain their reasoning in written findings. Such written findings would prevent the unnecessary confusion presented by this case. Because the trial judge's rationale is vague, it is difficult to tell what weight she placed on the hearsay evidence of Dahl's exposure to the two girls. However, the gravity of the incident and the fact that the judge specifically mentioned the allegation in her oral ruling indicates that the incident did influence the court's decision to revoke Dahl's SSOSA.
Because the revocation appears to have been based, at least in part, on consideration of the exposure incident, the due process error was not harmless. Dahl is therefore entitled to a new hearing. At the hearing, the trial court must make written findings of fact or produce an oral transcript *403 sufficiently detailed as to be amenable to judicial review.[3]

CONCLUSION
Dahl received adequate notice of the revocation proceeding against him because the State informed him of its allegation that he had violated the terms of his SSOSA sentence by failing to make reasonable progress in treatment. The State also adequately informed Dahl of the facts supporting its allegation by providing him with copies of the treatment provider reports. However, the court improperly considered unreliable hearsay evidence at the proceeding in violation of Dahl's minimal due process rights. Because the trial court's ruling lacks a clear explanation of the grounds for its decision, we are unable to conclude that this error was harmless. We accordingly remand and direct the trial court to conduct a new hearing in which the court explains the grounds for its decision.
SMITH, MADSEN, TALMADGE, IRELAND, JJ., and SWEENEY, J.P.T., concur.
ALEXANDER, J. (dissenting).
The majority holds that the trial court erred in not articulating a factual basis for its order revoking Dahl's Special Sexual Offender Sentencing Alternative (SSOSA), and it remands for a hearing following which the court is to explain the grounds for its new "decision." Majority op. at 403. Unfortunately, the majority has not told us why remand, rather than dismissal, is the proper remedy. In my judgment, dismissal of the State's petition to revoke is warranted because allowing the State a second opportunity to establish support for an order of revocation unfairly prejudices Dahl.
In reaching the conclusion that I do, I rely on State v. Head, 136 Wash.2d 619, 964 P.2d 1187 (1998), a case in which the trial court failed to enter written findings of fact and conclusions of law. Although we were there reviewing a trial judge's determination of guilt, the analysis we applied there should also have application here because the procedures and consequences that are attendant to a SSOSA revocation and a determination of guilt after a bench trial are similar. In a bench trial, the trial court is required to enter findings and conclusions to enable an appellate court to completely review the case on appeal. CrR 6.1(d). Similarly, a trial judge is to articulate the factual basis underlying revocation of a suspended sentence for exactly the same purpose. See State v. Lawrence, 28 Wash.App. 435, 439, 624 P.2d 201 (1981). Furthermore, the trial judge is the sole decision-maker in both proceedings, and either may result in the defendant's confinement. In light of these similarities, the remedy for the improper revocation of Dahl's SSOSA should be determined by employing the analysis we endorsed in Head.
In Head, we stated that "reversal may be appropriate where a defendant can show actual prejudice resulting from the absence of findings and conclusions." Head, 136 Wash.2d at 624, 964 P.2d 1187. As one "example" of "actual prejudice," we noted our concern that findings of fact entered on remand following argument on appeal could be tailored to meet the issues, as already framed on appeal, thus artificially justifying an otherwise improper decision. Head, 136 Wash.2d at 624-25, 964 P.2d 1187. Although I recognize that we indicated in Head that this kind of prejudice could only be shown after such tailored findings are entered on remand, it is my view that actual prejudice can be demonstrated prior to remand in a case where it is obvious that the trial court relied on the inadmissible hearsay evidence in reaching its decision. Here, it is readily apparent that the trial judge's decision to revoke was greatly influenced by inadmissible evidence. Indeed, the trial judge essentially said so in her oral ruling, which is set forth in its entirety as follows:
The Court has reviewed the file and the reports that were submitted. I'm going to note that on September 26th, 1996 there's *404 a letter from Michael O'Connell to Dr. Murphy where he's talking about neurological evaluation, and it says in the first paragraph that that may well interfere with his ability to be a subject of polygraph testing.
I'm also going to note that the neurological testing was done at the time of the last review, there was going to be a movement disorder checked out, and I see now that we're at this hearing, there's a possible learning disability or possible cognitive learning deficit that is scheduled to be tested on July 2nd. I think that his treatment providers have been trying to find out why his treatment is not progressing as they feel it should be and have come up with nothing.
The letter to the bank teller shows that while he may be truthful, he may be dangerous. He doesn't recognize that someone that he had sexual feelings about in the past would not be an appropriate person to be a confidante friend at this time. The exposure to the 13- and 14-year-old girls who identified him in a photo montage, and the evidence in his favor is a polygraph testing, which has been noted before he may not be suitable for; under all those considerations, I'm going to revoke his SSOSA.

Verbatim Report of Proceedings (VRP) at 15-16 (emphasis added). These brief remarks by the trial judge appear all the more significant when they are viewed in light of the fact that the revocation hearing consisted entirely of argument of counsel for the State and defendant, the presentation of a violation report from a community corrections officer, and the submission of letters from Michael O'Connell, of Michael A. O'Connell and Associates, a specialist in the evaluation and treatment of sexual deviants. The State's presentation largely centered on its highlighting of O'Connell's letter of June 10, 1997, in which O'Connell describes as his "most serious concern" a report that a man fitting Dahl's description had exposed himself to two teenage girls.[1] Clerk's Papers at 61. This evidence, which clearly was key to the trial court's decision, is evidence that the majority properly concludes was not admissible and should not have been considered by the trial court.
Although the majority acknowledges that the trial court's revocation order was based "at least in part" on consideration of the inadmissible evidence, it nevertheless remands to the trial court, in order to give it an opportunity to justify a decision that was clearly unjustified by the evidence before it. Majority op. at 402. This not only creates an appearance of unfairness, but it places an almost impossible burden on Dahl to prove, in the event the trial court again orders revocation of Dahl's SSOSA, that the trial court's findings of fact and conclusions of law were tailored to justify the decision.
In addition to the prejudice noted above, Dahl has also suffered the kind of prejudice the Court of Appeals recognized in State v. Witherspoon, 60 Wash.App. 569, 805 P.2d 248 (1991). Similar to the factual circumstance the court was faced with in Witherspoon, Dahl has been in custody since the trial court revoked his SSOSA on June 18, 1997. Presumably, he will remain in custody until such time as a new hearing is held and the trial court explains its decision in the form of findings of fact and conclusions of law. It will obviously take a great deal of time to accomplish all of this, time that the defendant would not have to confront if the trial court had done as it was supposed to do in June 1997. While I recognize that we held in State v. Royal, 122 Wash.2d 413, 858 P.2d 259 (1993), that a mere delay in entering findings of fact and conclusions of law does not automatically justify dismissal, we are faced here with a complete failure to enter findings and conclusions and confronted with an oral ruling that does not rest on a firm foundation due to the fact that it was based on inadmissible evidence. If in the likely event the trial court, the Court of Appeals, or *405 this court should conclude, following remand, that revocation is not justified, it will be impossible to undo the fact that the defendant has sat in jail for a period of years waiting for an unjustified revocation order to be set aside.
In the final analysis, Dahl has been in prison for approximately two and a half years since his SSOSA was revoked. He now faces an additional wait, during which the trial court is to revisit stale proceedings, hopefully ignoring a portion of the developed record upon which it previously relied. The majority opinion, which requires the trial court to consider the admissible evidence objectively and explain the grounds for its decision, overlooks the substantial prejudice Dahl suffers because of its ruling that remands for a new hearing. To protect Dahl's right to minimal due process I would dismiss the State's petition to revoke without prejudice to the State's right to file a new petition in the event it should conclude that there is a meritorious basis for doing so. I, therefore, dissent.
SANDERS and JOHNSON, JJ., concur.
NOTES
[1] The transcript of the proceeding makes evident that the judge had a copy of the note in front of her. However, the note was not admitted as evidence and is not part of the record.
[2] Dahl's additional argument that the court impermissibly relied on hearsay evidence in considering the note incident is without merit. Dahl not only failed to object to the court's consideration of the note incident, he referred to the note as an example of his attempts to develop social support. Accordingly, Dahl waived his right to challenge the court's consideration of the incident on appeal. A "[d]efendant's failure to object to a violation of due process and his own use of hearsay during argument constitute[s] a waiver of any right of confrontation and cross examination." State v. Nelson, 103 Wash.2d 760, 766, 697 P.2d 579 (1985).
[3] In addressing whether Dahl has failed to make reasonable progress in treatment, the parties are not limited to referring to those events that transpired prior to the invalid revocation. The trial judge may consider Dahl's recent conduct as well. However, if the State wishes to allege new violations, it must amend the notice provided to Dahl to reflect those new allegations.
[1] Counsel for the State indicated at the hearing:

"But what we see instead during this time frame is that Mr. Dahl continues in his deviant practices, we have, in effect, two different episodes, one which is alleged that during the time of his work release Mr. Dahl actually exposed himself to a couple young girls, 13 and 14 years old, the girls both identified Mr. Dahl from a photo montage." VRP at 5.