FILED
COURT OF APPEALS
DIVISION II

2013 DEC 31 AM 9: 16

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | |
| Respondent, | No. 43448-2-II |
| v. | |
| JOSEPH LIEF WOLF, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. – Joseph Wolf appeals an order revoking his special sex offender sentencing alternative (SSOSA), claiming that he was denied due process, his counsel was ineffective, and the trial court abused its discretion in ordering revocation. We affirm because Wolf requested the procedure he now challenges and he did receive due process, his counsel's request for an immediate hearing represented a legitimate strategy decision and therefore was not ineffective, and the trial court had a reasonable basis for its revocation order.

## FACTS

On October 9, 2008, Wolf pleaded guilty to two counts of first degree child rape. Following the terms of the plea agreement, the sentencing court imposed 131.9 months of confinement with 119.9 months suspended on the primary condition that Wolf successfully complete a three-year outpatient sex offender treatment program.[1]

---

[1] RCW 9.94A.670, the SSOSA statute, authorizes the trial court to suspend a first time offender's sentence if he is amenable to treatment.

Wolf violated his SSOSA conditions several times. On July 24, 2009, the trial court found a violation for having contact with minors. On November 13, 2009, the trial court found a violation for leaving Pierce County. On March 12, 2010, the trial court found a violation for viewing pornography. On July 20, 2011, the trial court found seven violations: being terminated from treatment, having an unauthorized romantic relationship, having unauthorized use of the Internet, consuming the synthetic marijuana drug Spice, consuming marijuana, being untruthful to his treatment provider and community corrections officer (CCO), and failing to make satisfactory progress in treatment. At the July 20 hearing the trial court indicated that it was giving Wolf one last chance.

On February 9, 2012, the Washington State Department of Corrections (DOC) filed a notice of another infraction with the superior court. Wolf appeared for hearing on February 24. At the time of the hearing, the State had not filed a petition for revocation. There was some initial confusion as to whether the matter was scheduled for a review hearing or a revocation hearing. However, Wolf was aware of the violations and stipulated that he had consumed methamphetamine and Spice. He also stipulated to the fact pattern supporting the third alleged violation that he was dishonest with his treatment provider. Wolf knew that the State was seeking revocation.

Despite the absence of a written revocation petition, Wolf's counsel wanted to hold the revocation hearing immediately. In his initial remarks to the court, defense counsel noted, "I would normally require that we have a petition filed before we proceed. . . . . Time is of the essence, from my perspective and I think Mr. Wolf's perspective, if the Court were to follow the recommendations that we're going to propose. I don't want to delay this matter." Report of Proceedings (RP) (Feb. 24, 2012) at 5. When the trial court asked defense counsel again to

2

No. 43448-2-II

explain why he was willing to proceed without the State having first filed a petition, defense counsel stated:

> He's stipulating to all three violations, in essence. [The prosecutor] is going to file a petition that alleges what she just told the Court. The third violation is that he was dishonest with his treatment provider. He's stipulated to facts that I think are sufficient for you to make whatever finding you want.
>
> . . . .
>
> State's going to recommend revocation, prison ten years. [Wolf's CCO], I believe, is going to recommend 30 days as a sanction. With all due respect, I'm going to ask you give him 18 days. The reason I picked that figure is he will be out on Sunday night and able to get back into schooling. I've submitted documents. I know [his CCO] has submitted documents to the Court. So I'm prepared to proceed. I know that you were, perhaps, caught off guard this was going to go forward as a revocation hearing.
>
> . . . .
>
> I can tell you from my perspective, again, time is of the essence. If we were to set this over even a week, which normally would be my preference and I would give the prosecutor a chance to file the petition, but I already know what the allegations are or are going to be. He's going to lose schooling, if we set this over even one week. He'll still maintain his housing and treatment, but he's going to get removed from school. [The attorney for TeamChild] can speak to that in more detail than I can, but that's why I would like to proceed today. I think all of the information that I can possibly get I have gotten and given to the Court.

RP (Feb. 24, 2012) at 11-12.

The trial court decided to proceed with the revocation hearing and then heard argument from the prosecutor, defense counsel, the community corrections officer, and the attorney representing TeamChild. The trial court then found the three alleged violations and revoked Wolf's SSOSA.

The State filed a revocation petition three days later on February 27. The petition contained the same information that had been presented at the hearing. Through new counsel, Wolf filed a motion for reconsideration. The trial court conducted a full hearing on Wolf's motion. After the hearing, the trial court denied the motion. Wolf appeals.

3

ANALYSIS

A.    DUE PROCESS

Because the revocation of a suspended sentence is not a criminal proceeding, a defendant is entitled only to minimal due process rights in a revocation proceeding. *State v. Dahl*, 139 Wn.2d 678, 683, 990 P.2d 396 (1999). This minimal due process for an offender facing revocation of a SSOSA requires (1) written notice of the claimed violations, (2) disclosure of the evidence against the offender, (3) an opportunity to be heard, (4) the right to confront and cross-examine witnesses, (5) a neutral and detached hearing body, and (6) a statement by the court of the evidence relied on and the reasons for the revocation. *Dahl*, 139 Wn.2d at 683 (citing *Morrissey v. Brewer*, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)).

Wolf argues that he was denied even minimal due process at his revocation hearing because (1) he did not get written notification of the claimed violations, (2) the trial court based its revocation decision on hearsay evidence, (3) the trial court found the violations based on defense counsel's stipulation to unverified facts and on a improper legal conclusion, (4) de novo review of the record shows the denial of minimal due process, and (5) the order reflects the lack of due process. However, Wolf waived his first four arguments. The record reflects that Wolf *requested* the trial court's procedure. Wolf urged the court to proceed without a written revocation petition. He did not object to the presentation of hearsay evidence. He stipulated to the alleged violations.

In *State v. Robinson*, 120 Wn. App. 294, 299-300, 85 P.3d 376 (2004), the defendant claimed due process violations because of lack of notice, the State's use of hearsay, and the trial court's failure to make a written statement of the evidence it relied on. Division One of this court refused to consider the notice and hearsay claims because Robinson did not object at the

trial court. *Robinson*, 120 Wn. App. at 299-300. And it found that the trial court's failure to state the evidence it relied on was not fatal because the record was sufficient to determine the trial court's reasons. *Robinson*, 120 Wn. App. at 300-01. *Robinson* controls here.

Further, Wolf did receive due process following the trial court's initial decision. The trial court conducted a full hearing on Wolf's motion for reconsideration. Wolf cannot claim that he did not have an opportunity to be heard.

As to his fifth claim, Wolf faults the trial court's written order because (1) it states that the matter came on for a regular hearing when, in fact, it had been noted as a review hearing not a revocation hearing and (2) it states that the trial court had read the petition when, in fact, the petition did not exist at that time. He argues that this court should void the order because it contains false statements.

The record reflects that the trial court was surprised that the parties wanted a revocation hearing because the docket reflected that a review hearing was scheduled. The trial court stated:

> If the three of you are willing to proceed with this as a revocation hearing, with the petition being filed after the fact, I'm willing to proceed. I want you to know that's not what was noted in front of me. This simply is report on a violation as far as I can tell.

RP (Feb. 24, 2012) at 11-12. After Wolf explained that time was of the essence and he did not want to wait, the trial court agreed to proceed with a revocation hearing. We fail to see any basis for voiding the revocation order because it says it came on for a regular hearing.

We also are not persuaded that because the boilerplate order states that the trial court considered the petition before the hearing there is a basis to void the order. The trial court had made its decision after reading the CCO violation report, listening to Wolf's stipulations, and considering the recommendations of the prosecutor, Wolf's CCO and Wolf. We agree with the

5

State that under these circumstances not striking the boilerplate language was a scrivener's error, not a due process violation. The remedy for clerical or scrivener's errors in judgment and sentence forms is remand to the trial court for correction. *In re Pers. Restraint of Mayer*, 128 Wn. App. 694, 701-02, 117 P.3d 353 (2005) (citing CrR 7.8(a)); see RAP 7.2(e). Here, though, Wolf does not seek that form of relief and so we do not remand. Wolf's due process claims fail.

B.     INEFFECTIVE ASSISTANCE OF COUNSEL

Wolf claims that counsel's performance at the revocation hearing denied him his right to effective assistance of counsel because (1) defense counsel's conduct was not objectively reasonable and (2) it is likely that the court would have imposed confinement rather than revocation had defense counsel protected Wolf's due process rights. We disagree.

This court reviews claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on an ineffective assistance of counsel claim, the defendant must show both that (1) defense counsel's representation was "deficient" and (2) the deficient representation prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 33. Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have differed. *Grier*, 171 Wn.2d at 34.

This court gives great deference to trial counsel's performance and begins its analysis with a strong presumption that counsel was reasonable. *Grier*, 171 Wn.2d at 33. A claim that trial counsel provided ineffective assistance does not survive if trial counsel's conduct can be characterized as legitimate trial strategy or tactic. *Grier*, 171 Wn.2d at 33. To rebut the strong

6

presumption that counsel's performance was effective, "the defendant bears the burden of establishing the absence of any 'conceivable legitimate tactic explaining counsel's performance.'" *Grier*, 171 Wn.2d at 42 (emphasis omitted) (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

We find neither prong satisfied here. The trial court and the parties were intimately aware of the facts. Including the plea and sentencing, there were 16 hearings over a three-and-one-half year period. Defense counsel represented Wolf in all but the motion for reconsideration. Over that course of time, defense counsel kept Wolf in the SSOSA program in spite of Wolf's repeated violations of the sentencing conditions. Everyone agreed that Wolf had a low risk of reoffense and that his best chance of success was in a community-based treatment program. Wolf suffered from mental disorders, substance abuse addiction, and a troubling family history. The trial court had articulated that Wolf's greatest chance of success was education and praised Wolf for completing his general educational development certification and being an honors student in college.

Defense counsel's urgency in resolving the revocation threat was to keep Wolf in school. Emphasizing school appears to be an attempt to focus the trial court's attention on that positive aspect of Wolf's life. This was a reasonable tactic in that the trial court in prior hearings had shown a willingness to allow Wolf's team of therapists and advocates to work toward making Wolf successful. Further, given Wolf's multiple prior violations, stipulating to current violations and pleading for mercy was a reasonable strategy.

We also do not find prejudice. The trial court ultimately decided that a SSOSA was inappropriate for Wolf because his issues were so complex. The trial court was intimately familiar with this case, having held all of the review hearings since June 2011 and having

7

presided over the July 2011 revocation hearing in which a new team approach to Wolf's issues resulted. At the revocation hearing, defense counsel made an impassioned plea for leniency, yet the trial court decided that Wolf just simply was not an appropriate candidate for a SSOSA. There is no indication that the trial court's decision would have been different if the revocation hearing procedure would have been different. Further, Wolf obtained new counsel for the motion for reconsideration, presented new evidence to the trial court, and again pleaded for an approach different than revocation. Again, the trial court denied the motion. There seems little or no likelihood that the result would have differed had defense counsel demanded a full hearing at the outset. Wolf's ineffective assistance of counsel claim fails.

C.   REVOCATION DECISION

Wolf claims that the trial court abused its discretion in revoking his SSOSA because it (1) did so without even providing minimal due process, (2) relied solely on hearsay evidence, and (3) denied his motion for reconsideration when it had revoked his SSOSA without observing minimal due process.

We review a trial court's decision to revoke a SSOSA for an abuse of discretion. *State v. Miller*, 159 Wn. App. 911, 918, 247 P.3d 457 (2011). A trial court abuses its discretion when its ruling is manifestly unreasonable or is based on untenable grounds or reasons. *Miller*, 159 Wn. App. at 918. A decision based on an error of law may constitute an abuse of discretion. *Miller*, 159 Wn. App. at 918. A trial court may revoke a SSOSA "at any time where there is sufficient proof to reasonably satisfy a trial court that the defendant has violated a condition of the suspended sentence or has failed to make satisfactory progress in treatment." *Miller*, 159 Wn. App. at 917-18 (citing *State v. McCormick*, 166 Wn.2d 689, 705, 213 P.3d 32 (2009)).

Wolf contends that the trial court's decision to hold the revocation hearing without respecting Wolf's minimal due process rights was a legal error and thus an abuse of discretion. We disagree. The trial court relied on the parties' assent to hold the hearing and only after offering to have a hearing at a later date and having defense counsel insist on having the hearing that day did it agree to do so. It is clear that Wolf knew about the alleged violations, stipulated to two of them, and stipulated to the facts surrounding the third. In that posture, there was no need for an evidentiary hearing as to the fact of the violations. And the trial court's reliance on hearsay was both invited and appropriate under the circumstances presented here.

As to the actual decision to revoke rather than consider other alternatives, the trial court's reasons were sound, based on its history with Wolf. As we noted above, the trial court had had a full evidentiary hearing seven months before and then only hesitantly gave Wolf another chance because of the complexity of issues affecting him. The trial court did not violate Wolf's minimal due process rights and thus did not abuse its discretion.

The trial court also did not abuse its discretion in denying the motion for reconsideration. After hearing from Wolf's new counsel and his CCO, the attorney for TeamChild, and a representative from the Post-Prison Education Project House, the trial court did reassess its decision to revoke. But the court concluded:

> You've asked me to reconsider based on a new plan and a plan that, I think, is probably the best possible plan that could be put together, but the truth is that [Wolf] has been given extraordinary support and opportunity that I have not seen in any other SSOSA candidate that has been in front of me, and despite everything that he was given, he still has not been able to succeed.
> . . . .
> I think [his CCO] kind of struck a chord there, is that given the complexity of the substance abuse and mental health issues, he's not supervisable by [DOC]. . . .
> . . . It's that he has had extraordinary resources that were devoted to him. He still hasn't been able to succeed. Perhaps the mistake that was made was mine

9

No. 43448-2-II

in giving him the opportunity in July, when we knew at that time that he had substance abuse issues.

RP (Apr. 27, 2012) at 52-54. Wolf fails to show that this well-reasoned approach was an abuse of discretion.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

JOHANSON, A.C.J.

BJORGEN, J.

10