FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2017 SEP 25 AM 11: 46

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 75306-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| RICKY DESHAWN KING, | ) | |
| | ) | |
| Appellant. | ) | FILED: September 25, 2017 |

SCHINDLER, J. — Ricky DeShawn King pleaded guilty to child molestation in the first degree. The court agreed to impose a suspended sentence under the special sex offender sentencing alternative (SSOSA). RCW 9.94A.670. King claims the decision to revoke his SSOSA violated his right to due process. We disagree, and affirm.

## FACTS

In 2014, Ricky DeShawn King and Artia Henderson lived together with their children, twin six-year-old boys and a four-month-old daughter, and Henderson's seven-year-old son and nine-year old daughter A.W.H. In March 2014, the State charged King with child molestation of A.W.H. in the first degree.

King agreed to enter a plea of guilty of child molestation in the first degree. The State agreed to recommend a special sex offender sentencing alternative (SSOSA) and King agreed to nine months confinement.

On January 23, 2015, the court imposed a SSOSA. The court sentenced King to 96 months to life and suspended the sentence subject to compliance with a number of conditions. The judgment and sentence required King to undergo sex offender treatment for five years and "enter, make reasonable progress in, and successfully complete" the treatment program with Steve Silver at Northwest Treatment Associates. Appendix H of the judgment and sentence sets forth additional SSOSA conditions, including King (1) have no direct or indirect contact with the victim, (2) have no contact with other minors and avoid places where minors congregate, (3) inform his community corrections officer (CCO) of any romantic relationship, (4) submit to polygraph and urinalysis (UA) testing, and (5) update the Washington State Department of Corrections (DOC) with any change of address. The court scheduled a review hearing for January 20, 2016.

The court later rescheduled the review hearing for January 27, 2016. At the hearing on January 27, CCO Emily Isaacs informed the court that King had not been in group sessions for sex offender treatment since October 27, 2015. The court continued the hearing until February 10, 2016. King was seen leaving the courthouse with an adult female and a female child.

On February 3, 2016, DOC submitted a "Notice of Violation." The report alleged King violated the conditions of his SSOSA by (1) having unapproved contact with a minor on or about January 27, 2016; (2) having unapproved contact with minors on or about December 25, 2015; (3) failing to advise DOC of a romantic relationship with Henderson; (4) not participating in sex offender treatment since October 27, 2015; and (5) admittedly consuming alcohol.

2

At the violation hearing on February 16, 2016, King admitted the violations. CCO Isaacs recommended that the court revoke King's SSOSA. The court did not revoke the SSOSA. The court entered an order finding King violated the SSOSA conditions and imposed credit for time served.

On March 25, 2016, DOC submitted a Notice of Violation. The Notice of Violation alleged King failed to comply with the conditions of supervision by (1) having contact with minors on or about March 23, 2016; (2) having contact with the victim on or about March 23, 2016; (3) not reporting to DOC prior to his polygraph appointment as directed on March 23, 2016; (4) being unavailable for UA testing on March 23, 2016; (5) leaving DOC without permission after his polygraph on March 23, 2016; and (6) not advising DOC of his address on or about March 23, 2016.

On March 28, 2016, the court issued a bench warrant. Officers arrested King outside Henderson's residence.

On April 4, 2016, DOC submitted a "Supplemental Notice of Violation" alleging King (7) did not comply with the "Sexual Assault Protection Order" by being at the victim's residence on or about April 1, 2016; (8) did not comply with the conditions of supervision by possessing methamphetamine on or about April 1, 2016; and (9) was terminated from sex offender treatment on or about April 1, 2016.

At the revocation hearing on May 3, 2016, the State struck allegation (8), possession of methamphetamine. King admitted allegation (1), having contact with minors on or about March 23, 2016; allegation (3), not reporting to DOC prior to his polygraph appointment as directed on March 23, 2016; allegation (4), being unavailable for UA testing on March 23, 2016; allegation (5), leaving DOC without permission after

3

his polygraph on March 23, 2016; allegation (7), not complying with the Sexual Assault Protection Order by being at the victim's residence on or about April 1, 2016; and allegation (9), termination from sex offender treatment on or about April 1, 2016. King denied allegation (2), having contact with A.W.H. and allegation (6), failing to advise DOC of his address.

At the hearing, the State, DOC, and King addressed allegations (2) and (6). The court also considered the two DOC violation reports, a letter from King's sex offender treatment provider Steve Silver, and a letter from King.

Silver said King attended only six sessions in 12 months. The letter states, in pertinent part:

> Given client's history, lack of cooperation on supervision, lack of engagement in counseling, severity of allegations, and recent flight, it would appear that risk in [the] community is escalating. . . .

> Mr. King is not welcome to return to our program.

In his letter to the court, King admits that he failed the polygraph examination, that he left the probation office without permission, that he lied during the polygraph test after "knowingly having talked to my sons," and that he "had to go see my wife and kids" after fleeing the probation office.

The court entered an order finding King willfully violated the terms and conditions of his SSOSA and each of the alleged conditions. The court revoked the SSOSA.

ANALYSIS

King argues the court violated his right to due process by finding he violated the conditions of his SSOSA by having contact with A.W.H. and failing to inform DOC of his address.[1]

"The revocation of a suspended sentence is not a criminal proceeding." State v. Dahl, 139 Wn.2d 678, 683, 990 P.2d 396 (1999). In SSOSA revocation hearings, offenders are entitled to the same minimal due process rights as those afforded in probation or parole revocation hearings. Dahl, 139 Wn.2d at 683.

Minimal due process requires (a) written notice of the claimed violations, (b) disclosure to the parolee of the evidence against him, (c) the opportunity to be heard, (d) the right to confront and cross-examine witnesses (unless there is good cause for not allowing confrontation), (e) a neutral and detached hearing body, and (f) a statement by the court as to the evidence relied upon and the reasons for the revocation. Morrissey v. Brewer, 408 U.S. 471, 489, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). "Courts have limited the right to confrontation afforded during revocation proceedings by admitting substitutes for live testimony, such as reports, affidavits and documentary evidence." Dahl, 139 Wn.2d at 686. The court may consider hearsay evidence if there is good cause to forego live testimony. Dahl, 139 Wn.2d at 686.

We review a court's decision to revoke a SSOSA suspended sentence for abuse of discretion. State v. Badger, 64 Wn. App. 904, 908, 827 P.2d 318 (1992). "A trial court abuses its discretion when its decision is manifestly unreasonable or is based on

---

[1] King argues in his brief that he also denied allegation (3), failing to report to DOC prior to his polygraph. However, the record establishes King admitted to this violation. At the May 3 revocation hearing, defense counsel stated King "didn't meet with his CCO before the polygraph. He admits that."

untenable grounds." State v. Partee, 141 Wn. App. 355, 361, 170 P.3d 60 (2007). The court has the statutory authority to revoke a SSOSA if (a) the offender violates the conditions of the suspended sentence or (b) the court finds that the offender is failing to make satisfactory progress in treatment. RCW 9.94A.670(11); State v. Miller, 180 Wn. App. 413, 416, 235 P.3d 230 (2014).

Because the undisputed record establishes that King did not make "reasonable progress" in a treatment program and that Silver terminated King from the treatment program, the court had the authority to revoke his SSOSA on that ground alone. But the record also shows that King admitted he violated the conditions of his SSOSA by having contact with minors, failing to report to DOC prior to his polygraph, being unavailable for UA testing, leaving DOC without permission, and being at the victim's residence.

Nonetheless, King argues the court violated his right to due process and the right to confrontation by finding he willfully violated the SSOSA when he had contact with A.W.H. The SSOSA prohibits direct or indirect contact with the victim. The Notice of Violation cites King's own statement as evidence that he had contact with A.W.H. During his polygraph examination, King told the examiner, in pertinent part:

> Mr. King said the victim is always with his wife, Tia Henderson, so she [the victim] may have been at his father's house when he stopped by. Mr. King followed that up by saying he "couldn't say for sure."[2]

In his letter, King admitted he saw Henderson and his children prior to his arrest at Henderson's residence. The record supports finding King violated the SSOSA by having contact with A.W.H.

---

[2] Alteration in original.

King also challenges the finding that he did not advise DOC of his correct address. The Notice of Violation alleged King referred to "his house" and "his room" on several occasions despite informing DOC that he slept at the Seattle City Hall Shelter. At the hearing, King denied the change of address allegation. Defense counsel told the court King was still "living in shelters" but admitted King spent time at his father's residence, received mail at his father's residence, and referred to his father's residence as " 'my house.' " The attorney stated that because King's father "lives in a retirement community," King cannot "stay the night there." Sufficient evidence supports finding King failed to report his address to DOC.

We affirm.

WE CONCUR: