IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37978-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ADAM ROSS HENDRON, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Adam Hendron appeals after the trial court revoked his SSOSA[1] sentence and ordered that he have only indirect contact with his minor son conditioned upon the mother's approval. We affirm the trial court's revocation of Mr. Hendron's SSOSA sentence, but remand for it to consider on the record a less restrictive alternative no contact order.

FACTS

On October 9, 2008, Adam Hendron pleaded guilty to two counts of rape of a child in the second degree. The trial court accepted Mr. Hendron's plea and imposed a SSOSA sentence of 131 months in prison with all but 12 months suspended.

---

[1] Special sex offender sentencing alternative.

Mr. Hendron's SSOSA required him to refrain from contact with minors, to stay within a specific geographical boundary, to comply with crime-related prohibitions, to comply with sexual deviancy treatment, and to perform affirmative acts necessary to monitor compliance with court orders as required by the Department of Corrections (DOC).

Mr. Hendron was released from custody on May 1, 2009. On June 22 and June 24, Mr. Hendron failed to report as required for a polygraph examination. Mr. Hendron further failed to attend sex offender treatment throughout the month of June and had no further communication with DOC. Based on this, the trial court issued a warrant for his arrest. Unknown to the authorities, Mr. Hendron had absconded to Mexico where he married and had a son.

In 2016, Mr. Hendron was apprehended and extradited to California and then to Washington. The State moved to revoke Mr. Hendron's SSOSA. The trial court denied the motion but sentenced Mr. Hendron to 240 days of jail time. It further ordered Mr. Hendron to report to DOC for treatment immediately after his release.

Mr. Hendron served his time and did well after his release. He complied with his SSOSA treatment for several months. His January 24, 2018 progress report recommended that he be allowed to have contact with his son. Mr. Hendron brought a

2

motion to modify his community custody conditions to allow contact with his son. On May 4, 2018, the court denied the motion without prejudice.

Mr. Hendron was uncooperative with the polygraph examination on August 21, 2018. He was breathing deeply and changing his answers on the control question. The polygrapher asked Mr. Hendron several times not to do these things. The polygraph produced invalid results and the polygrapher notified DOC but DOC chose not to sanction Mr. Hendron.

Mr. Hendron was uncooperative during his next polygraph examination on January 23, 2019. He made it impossible for the examiner to conduct a valid test because he controlled his breathing and changed his answers to the control questions despite being repeatedly told not to do so. Mr. Hendron's refusal to cooperate resulted in the examination being stopped.

The polygrapher notified Mr. Hendron's new community corrections officer, Julie Johnson, of Mr. Hendron's refusal to cooperate. Ms. Johnson discussed the matter with her supervisor. On review of Mr. Hendron's file, the supervisor found that he had committed a willful violation. Mr. Hendron was then detained in jail.

DOC suspected that Mr. Hendron was having unauthorized contact with his son. Ms. Johnson visited Mr. Hendron in jail and requested the password to his cell phone.

Although a condition of Mr. Hendron's SSOSA required him to comply with this request,

he refused and asked for his attorney. Mr. Hendron's treatment provider terminated

treatment because of these and other problematic behaviors.

The State filed a petition to revoke Mr. Hendron's SSOSA. The petition set forth

three violations: (1) failure to cooperate with the January 23, 2019 polygraph

examination, (2) termination from treatment, and (3) refusal to provide the telephone

password for an approved search.

The trial court heard testimony from five witnesses over the course of four

nonconsecutive days. Following the hearing, the trial court announced its decision:

> [A]fter listening to all of the testimony in this case . . . [and] after I review
> my notes, and given the totality of the evidence, I simply do not believe that
> Mr. Hendron is going to be successful or be able to sufficiently comply or
> complete the SSOSA sentence.
>     . . . .
>     The violations that we've been discussing today are more than just
> happenstance. I want to say that I do not believe that missing one day of
> antianxiety medication, or antidepression, would lead to the type of reaction
> that Mr. Hendron purportedly had during the polygraph exam. I also don't
> believe that it was Officer Johnson's responsibility to go over all of the
> terms of the SSOSA again with Mr. Hendron. He's had those terms gone
> over with him numerous times since 2009.
>     So the treatment termination, the failure to comply with the
> polygraph, the failure to turn over the cell phone password, the totality of all
> of these things lead me to revoke the SSOSA that was given to Mr.
> Hendron.

4

Report of Proceedings (RP) at 281-82. The trial court ordered Mr. Hendron to serve his 131 months of incarceration followed by lifetime community custody.

Mr. Hendron then asked to have e-mail or telephonic contact with his son. The State objected to the request until it had a chance to hear from the mother and the son. The court agreed and asked that defense counsel provide the mother's contact information to the State or obtain a notarized statement from the mother signifying her support so contact could be facilitated.

In the order revoking Mr. Hendron's SSOSA, the trial court wrote: "[Mr. Hendron] may not have contact with minor children except for email and phone contact with biological son: J.H.-V. upon approval of bio[logical] mom via email." Clerk's Papers at 114. Mr. Hendron timely appealed the revocation order.

## ANALYSIS

### ORAL RULING ADEQUATE FOR REVIEW

Mr. Hendron argues the trial court's oral ruling is inadequate for appellate review. He does not seek remand for entry of formal findings of fact and conclusions of law. Nor does he assign error to challenge the evidentiary bases given by the trial court for revoking his SSOSA sentence.

A SSOSA sentence may be revoked at any time if there is sufficient proof to reasonably satisfy the court that the offender has violated a condition of the suspended sentence or failed to make satisfactory progress in treatment. *State v. McCormick*, 166 Wn.2d 689, 705, 213 P.3d 32 (2009); RCW 9.94A.670(11)(a)-(b). We review a trial court's decision to revoke a SSOSA sentence for an abuse of discretion. *State v. Ramirez*, 140 Wn. App. 278, 290, 165 P.3d 61 (2007).

An offender facing revocation of a SSOSA sentence has only minimal due process rights akin to one facing revocation of probation or parole. *State v. Dahl*, 139 Wn.2d 678, 683, 990 P.2d 396 (1999). "Due process requires that judges articulate the factual basis of the decision." *Id.* at 689. "Although oral rulings are permitted, we strongly encourage judges to explain their reasoning in written findings." *Id.* A reviewing court that is unable to determine from the record the basis for a lower court's discretionary ruling may reverse the ruling and remand the case for further proceedings. *State v. Rafay*, 167 Wn.2d 644, 655, 222 P.3d 86 (2009).

Mr. Hendron argues the trial court's findings are insufficient for meaningful review and we should reverse the trial court. He cites *Dahl* as an example of a case where the court reversed a SSOSA revocation because there were no written findings. Mr. Hendron misapprehends the holding in *Dahl*. In *Dahl*, the court reviewed a case

where the trial court had taken unreliable hearsay evidence at the proceeding. 139 Wn.2d at 690. Because the trial court did not give written findings and did not adequately show what evidence it based its decision on, the court in *Dahl* was unable to determine whether the error was harmless. *Id.* The error that required reversal was not the findings themselves, as Mr. Hendron argues here, but the hearsay evidence. *Id.*

Mr. Hendron acknowledges the trial court found three violations to support revocation of his SSOSA sentence: "failing to comply with a polygraph, being terminated from treatment, and refusing to provide his cell phone password." Br. of Appellant at 12. The record aptly supports that those were the three violations relied on by the trial court. The trial court explained: "So the treatment termination, the failure to comply with the polygraph, the failure to turn over the cell phone password, the totality of all of these things lead me to revoke the SSOSA that was given to Mr. Hendron." RP at 282. Because the trial court's oral ruling is sufficient for us to understand the bases for its discretionary ruling, we reject Mr. Hendron's first argument.

ORDER LIMITING PARENTAL CONTACT

Mr. Hendron next argues the trial court erred by not permitting contact between him and his son. We observe that the trial court permitted indirect contact, the type of

contact requested by Mr. Hendron, although it conditioned that contact on the mother's approval.

The State acknowledges that the trial court did not properly make a finding on the record that its order was the least restrictive alternative and that remand is necessary for the trial court to make such a finding. We agree.

"The due process clause of the Fourteenth Amendment [to the United States Constitution] protects a parent's right to the custody, care, and companionship of her children." *In re Welfare of Key*, 119 Wn.2d 600, 609, 836 P.2d 200 (1992). "The state may interfere in a parent-child relationship 'if it appears that parental decisions will jeopardize the health or safety of the child, or have a potential for significant social burdens . . . .'" *Flaggard v. Hocking*, 13 Wn. App. 2d 252, 258, 463 P.3d 775 (2020) (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 234, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972)).

However, the trial court must consider on the record whether there are less restrictive alternatives when interfering with the fundamental right to parent even where the condition serves a compelling state interest. *State v. DeLeon*, 11 Wn. App. 2d 837, 840-41, 456 P.3d 405 (2020). And even where there is a compelling interest, the trial court must still make a finding on the record that there are no other less restrictive orders that would satisfy the same interest. *Id.* This includes a finding that both the scope and

8

duration of the order are reasonably necessary to serve the State's compelling interest.
*In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 377-82, 229 P.3d 686 (2010).

Here, the trial court made no such findings.[2] We remand for the trial court to conduct a hearing, be allowed to consider the mother's input, and make the proper findings on the record.

Affirmed in part, remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Pennell, C.J.                    Fearing, J.

---

[2] The fault lies with the parties, not with the trial court. The trial court reasonably envisioned the parties resolving this issue with the input of the boy's mother. Apparently they did not.