# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 72752-4-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JUSTIN COUNTRYMAN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: January 19, 2016 |
| | ) | |

LAU, J. — Justin Countryman appeals the trial court's revocation of his suspended sentence under the Special Sex Offender Sentencing Act (SSOSA). He argues that because he lacked notice the trial court would consider certain documents, the court violated his right to due process. He also challenges several of his community custody conditions. Because he was afforded the "minimal due process" that revocation proceedings require, Countryman does not establish a due process violation. And his statement of additional grounds does not demonstrate any abuse of discretion. We accept the State's concessions that the community custody conditions involving drugs, breathalyzer and plethysmograph testing, and pornography should be stricken or modified. Countryman's challenge to the condition requiring consent to home searches,

however, is not ripe for review. We affirm the trial court's decision revoking Countryman's SSOSA. We remand for amendment of Countryman's judgment and sentence consistent with this opinion.

## FACTS

In August 2007, after a bench trial on stipulated facts, the trial court found Justin Countryman guilty of one count of rape of a child in the first degree. The charges arose from acts committed against his 4-year-old niece. The court granted Countryman a SSOSA, suspended his 123-month prison term, and imposed a number of conditions. In January 2012, the court found that Countryman had successfully completed sexual deviancy treatment, satisfying one of these conditions.

In April 2014, the Department of Corrections (DOC) alleged that Countryman violated three conditions of his sentence, later withdrawing two of the allegations. In May 2014, the court found Countryman violated one condition by having unsupervised contact with two 12-year-old girls on Facebook. The court ordered Countryman to serve 60 days in jail and reengage in sex offender treatment. The court prohibited Countryman from having any contact with minors.

On September 30, 2014, the DOC alleged two new violations: failing to report a change of address and associating with minors by visiting a residence where minors live without permission from his community corrections officer (CCO) and therapist. A week later, the DOC issued a supplemental notice of violation, which reported that a recent polygraph examination showed "significant

reactions indicative of deception." Clerk's Papers (CP) at 31-33. The State moved to revoke the SSOSA, stating that it would rely on the September 30 and October 6 notices of violation, documents in the court file, and the testimony of Countryman's CCO and the victim's mother.

In a review hearing memorandum, defense counsel objected to the admission of any polygraph results. Counsel also objected to "consideration of other alleged violations not proven [,] referenced in the DOC reports dated September 30, 2014 and October 6, 2014 and the State's brief." CP at 20.

At the November 2014 revocation hearing, Countryman's CCO testified about both alleged violations. After the State withdrew the first alleged violation, Countryman stipulated to the second, admitting associating with a minor in the minor's residence without prior DOC approval. The State changed its recommendation from revocation to sanction.

The court found that Countryman violated the condition. Rejecting the parties' proposed agreement on sanctions, the court revoked Countryman's SSOSA and reimposed the 123-month minimum term sentence. The court also imposed a lifetime term of community custody, incorporating the specific conditions of his original sentence.

Countryman appeals.

ANALYSIS

<u>SSOSA and Due Process</u>

Countryman contends that in revoking his SSOSA, the trial court violated his right to due process. He argues that he lacked notice that the court would

3

consider certain evidence, and therefore, he did not have opportunity to contest it.

A court may revoke an offender's SSOSA at any time if the court finds that the offender has violated the conditions of the suspended sentence or is failing to make satisfactory progress in treatment. Former RCW 9.94A.670(10) (2006);[1] State v. McCormick, 166 Wn.2d 689, 705, 213 P.3d 32 (2009). "The revocation of a suspended sentence is not a criminal proceeding, but rather an extension of the original criminal conviction." McCormick, 166 Wn.2d at 699. Therefore, an offender facing revocation of a SSOSA has only "minimal due process rights" because the offender has already pleaded or been found guilty. State v. Dahl, 139 Wn.2d 678, 683, 990 P.2d 396 (1999). "Proof of violations need not be established beyond a reasonable doubt but only must 'reasonably satisfy' the court the breach of condition occurred." State v. Badger, 64 Wn. App. 904, 908, 827 P.2d 318 (1992). These minimal due process rights, articulated by the United States Supreme Court in the context of parole violations, include:

> (a) written notice of the claimed violations; (b) disclosure to the parolee of the evidence against him; (c) the opportunity to be heard; (d) the right to confront and cross-examine witnesses (unless there is good cause for not allowing confrontation); (e) a neutral and detached hearing body; and (f) a statement by the court as to the evidence relied upon and the reasons for the revocation.

Dahl, 139 Wn.2d at 683 (citing Morrissey v. Brewer, 408 U.S. 471, 488-89, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)). Upon revocation, the court reinstates the original sentence. Dahl, 139 Wn.2d at 683.

---

[1] All references to the SSOSA statute cite to the version in effect at the time of Countryman's offense (Aug. 1, 2006 to Feb. 16, 2007). CP at 119; RCW 9.94A.345.

4

We review a trial court's decision to revoke a SSOSA due to violations for abuse of discretion. McCormick, 166 Wn.2d at 705-06. "An abuse of discretion occurs only when the decision of the court is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" McCormick, 166 Wn.2d at 706 (quoting State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). "A decision is based 'on untenable grounds' or made 'for untenable reasons' if it rests on facts unsupported in the record or was reached by applying the wrong legal standard." State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) (quoting State v. Blackwell, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993)). A court "'necessarily abuses its discretion by denying a criminal defendant's constitutional rights.'" State v. Iniguez, 167 Wn.2d 273, 280, 217 P.3d 768 (2009) (quoting State v. Perez, 137 Wn. App. 97, 105, 151 P.3d 249 (2007)). We review such a constitutional claim de novo. Iniguez, 167 Wn.2d at 280.

Countryman argues that the court violated his right to due process when it "relied on evidence that was not presented at the revocation hearing and which Countryman did not have an opportunity to contest." Br. of Appellant at 10. Specifically, he alleges that the court improperly relied on statements in reports by Norman Glassman, a sex offender treatment provider. Glassman reported that during his 2007 evaluation, Countryman disclosed two uncharged acts of molestation against children, one when Countryman was 13-years-old and the other when he was 10-years-old. The State's presentence investigation cited to Glassman's report, including this disclosure. Countryman also faults the court for relying on treatment provider Stephanie Overton's September 2014 report, in

which she characterized Countryman's progress as "fair" and his risk of reoffending as "low/moderate." CP at 41-43. The State attached this report and the September 2014 notice of violation to its October 2 petition to revoke Countryman's SSOSA. Countryman argues, "Both of these allegations formed part of the court's reason for revocation, but [he] was not given notice that the court would rely on these evidentiary allegations as a basis to revoke the SSOSA." Br. of Appellant at 11.

Countryman does not establish a violation of his right to due process. "Due process requires that the State inform the offender of the specific violations alleged and the facts that the State will rely on to prove those violations." Dahl, 139 Wn.2d at 685. Countryman does not dispute that he had notice of the alleged violation and the evidence the State would present. Minimal due process allows courts to admit sufficiently reliable substitutes for live testimony, such as the reports at issue, and Countryman does not show why he was entitled to notice of any particular documents in his file. Dahl, 139 Wn.2d at 686. While Countryman objected in his memorandum to the court's consideration of alleged violations which the State later withdrew, he failed to object to consideration of either Glassman's or Overton's report. He has waived his objection to these witnesses' testimony. State v. Nelson, 103 Wn.2d 760, 766, 697 P.2d 579 (1985). The notice Countryman received met minimal due process standards. Dahl, 139 Wn.2d at 686.

Due process also requires "a statement by the court as to the evidence relied upon and the reasons for the revocation." Dahl, 139 Wn.2d at 683. In its

6

oral ruling, the trial court stated, "I went back through the entire file." Report of Proceedings (RP) (Nov. 13, 2014) at 5. The court referenced Countryman's alleged 2007 disclosures to Glassman of uncharged conduct, as well as Overton's 2014 risk assessment. But in making its revocation decision, the court focused on the September 2014 notice of violation that prompted the State to move for revocation:

> Five months later here we are again. He goes in a residence where he was expressly with a minor, and he knew he wasn't to be there. I mean—and I ordered him back into treatment. Treatment notes say that his compliance is fair, but what I do note is that the supervising treatment provider now risk—lists his risk of re-offending not just as low, but as low/moderate. This is all really a concern to the Court. I mean, my job is not just to agree to a stipulation where the parties have reached a result, it is to make sure that the Defendant is—that the community is safe from the Defendant.

RP (Nov. 13, 2014) at 6.

Here, especially given that Countryman stipulated to the violation at issue, the court was "reasonably satisfied that [Countryman] violated a condition of his suspended sentence." Dahl, 139 Wn.2d at 683. The trial court applied the correct legal standard in revoking Countryman's SSOSA sentence. Countryman fails to show any denial of due process or abuse of discretion.

### Community Custody Conditions

Countryman also asserts that several of his conditions of community custody should be stricken. First, he challenges five drug-related prohibitions in conditions 10 through 14 as not crime-related and violative of his constitutional rights. CP at 117-118. Courts may impose only sentences that are authorized by statute. State v. Miller, 159 Wn. App. 911, 930-31, 247 P.3d 457 (2011). We

7

review whether a court had the statutory authority to impose a community custody condition de novo. State v. Armendariz, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). An offender in community custody "shall comply with any crime-related prohibitions." RCW 9.94A.700(5)(e). A "'[c]rime-related prohibition' . . . directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(13); State v. Land, 172 Wn. App. 593, 605, 295 P.3d 782 (2013).

The State concedes that because there is no evidence that Countryman's crime involved drugs, these conditions are not crime-related and should be stricken. We accept the State's concession. See Land, 172 Wn. App. at 605 (where there is no evidence that drug use or possession of drug paraphernalia bore any relation to offenses, such conditions must be stricken as not crime-related). Similarly, because Countryman's crime did not involve alcohol, and the conditions of community custody do not prohibit him from using alcohol, we accept the State's concession that the condition requiring breathalyzer examinations is neither crime-related nor necessary to monitor compliance with other conditions.

Consistent with our Supreme Court's 2008 decision in State v. Bahl, 164 Wn.2d 739, 758, 193 P.3d 678 (2008), we also accept the State's concession that condition 6, prohibiting Countryman from possessing or accessing "pornographic materials," is unconstitutionally vague. Br. of Appellant at 21, Br. of Resp't at 17. On remand, this condition should be modified to prohibit "sexually explicit material" as defined in RCW 9.68.130. See Bahl, 164 Wn.2d at

8

758, 760 (statutory definitions do not provide adequate notice of meaning of "pornography," but in this context, the term "sexually explicit" not unconstitutionally vague).

We also accept the State's concession that, as this court held in Land, "plethysmograph testing is not an appropriate DOC monitoring tool but can be required as part of treatment." Br. of Appellant at 22; Br. of Resp't at 17; 172 Wn. App. at 605. Condition 14, requiring Countryman to submit to plethysmograph examinations "as directed by the supervising CCO, to ensure conditions of community custody," should be stricken. CP at 118.

Finally, Countryman challenges condition 17, which requires him to "consent to DOC home visits to monitor your compliance with supervision. Home visits include access for purposes of visual inspection of all areas of the residence in which you live or have exclusive or joint control and/or access." Br. of Appellant at 25; CP at 118. In State v. Cates, 183 Wn.2d 531, 354 P.3d 832 (2015), our Supreme Court recently considered a facial constitutional challenge to a substantially similar community custody condition.[2] In Cates, the court held that "[f]urther factual development [was] needed" before the challenge was ripe for review, and "[the defendant] [did] not face a significant risk of hardship by [the court] declining to review the merits in the absence of developed facts." Cates, 183 Wn.2d at 536.

---

[2] The condition at issue in Cates was broader than Countryman's, adding "computers which you have access to" to the areas DOC could search. Cates, 183 Wn.2d at 533.

The Cates decision controls our decision here. Countryman's challenge to condition 17 is not ripe for review.

Statement of Additional Grounds

In a statement of additional grounds (SAG), Countryman alleges "discrepancies in the court's statements made while determining my revocation." SAG at 1. He claims the trial court "misunderstood, and drew incorrect conclusions about my compliance" when it stated at the revocation hearing that he was only compliant for 15 months, rather than the 27 months between his release from treatment in January 2012 and his first notice of violation in April 2014. SAG at 1-2; RP (Nov. 13, 2014) at 7. But he fails to show why this discrepancy was critical to the court's determination or that it constitutes an abuse of discretion.[3]

Countryman also alleges that the court misrepresented his "offense cycle" and, consequently, mistakenly and "with a biased agenda," evaluated his risk to the community. SAG at 2-3. He faults the court for misconstruing his defense to the charged violation and for considering Dr. Glassman's 2007 report, which he argues "isn't entirely accurate." SAG at 8. He asserts that the court misinterpreted official evaluations of his risk of reoffending. In each of these contentions, Countryman asks us to review the trial court's weighing of the evidence. But it is the trial court's role, not this court's, to assess the credibility of witnesses and resolve differing accounts or interpretations of the evidence. See

---

[3] Defects in a trial court's oral comments do not constitute proper assignments of error, and Countryman may not use them to impeach the court's judgment here. Rutter v. Rutter's Estate, 59 Wn.2d 781, 784, 370 P.2d 862 (1962).

10

<u>State v. Fiser</u>, 99 Wn. App 714, 719, 995 P.2d 107 (2000) ("This court must defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence.").

While Countryman frames his fourth contention as a constitutional question, arguing that the phrase "associating with minors" in the September 2014 notice of violation is unconstitutionally vague, he is essentially claiming that insufficient evidence supported the trial court's decision to revoke. SAG at 5. His stipulation to the violation on which the court based its decision undermines that argument. None of Countryman's allegations in his SAG demonstrate that the court abused its discretion.

CONCLUSION

Our review of the record shows that Countryman received adequate notice of the facts and evidence the State would present in support of revocation, satisfying Countryman's due process rights as set forth in <u>Dahl</u>. Countryman's additional arguments do not establish grounds for relief. We affirm the trial court's order revoking the suspended sentence. We remand for amendment of the judgment and sentence consistent with this opinion.

WE CONCUR:

11