232 P.3d 1091 (2010)
In the Matter of the Personal Restraint of Douglas Louis BLACKBURN, Petitioner.
No. 82329-4.
Supreme Court of Washington, En Banc.
Argued March 18, 2010.
Decided May 27, 2010.
*1092 Jodi R. Backlund, Manek R. Mistry, Backlund & Mistry, Olympia, WA, for Petitioner.
Timothy Norman Lang, Donna H. Mullen, Paul Douglas Weisser, Office of the Attorney General, Olympia, WA, for Respondent.
FAIRHURST, J.
¶ 1 The issue we decide in this case is the level of specificity that due process requires for a notice of an alleged community custody violation that is punishable by reclassification and transfer to total confinement.

I. STATEMENT OF THE CASE
¶ 2 Douglas Louis Blackburn pleaded guilty in 2004 to two drug crimes. The sentencing court found Blackburn was eligible for a drug offender sentencing alternative, former RCW 9.94A.660 (2002), and gave him a sentence split into a term of total confinement and a term of community custody, along with a substance abuse treatment program. One of the conditions of community custody required Blackburn to "obey all laws."[1] Suppl. Br. of Resp't Department of Corrections (DOC), App. A at 9. After Blackburn was released from total confinement in October 2006, DOC transferred him to community custody. Upon finding that Blackburn willfully violated a condition of community custody, DOC had discretion to reclassify him and return him to total confinement "to serve the remaining balance of the original sentence." Former RCW 9.94A.660(3)(a).
¶ 3 On May 15, 2008, DOC sent Blackburn a notice alleging the following violation of his community custody conditions: "FAILURE TO OBEY ALL LAWS: SPECIFICALLY, THREATENING TO KILL SHELLY BLACKBURN [his sister-in-law] ON OR ABOUT 5/14/08." Suppl. Br. of Resp't DOC, App. D at 1. The notice also listed the documents and witnesses that DOC intended to present at a violation hearing. The sixth item on the list was RCW 9A.46.020, the harassment statute. A hearing officer found Blackburn violated RCW 9A.46.020, and he entered an order reclassifying him to serve the remainder of his sentence as a term of total confinement. The DOC administrative appeals panel affirmed. Blackburn filed a personal restraint petition directly in this court, and we retained it for a decision on the merits.

II. ANALYSIS
¶ 4 When a person seeks relief by personal restraint petition and has not had a prior opportunity for judicial review of the grievance, the petitioner must establish, in order to prevail on the merits of his claim, "that he is restrained under RAP 16.4(b) and that the restraint is unlawful under RAP 16.4(c)." In re Pers. Restraint of Isadore, 151 Wash.2d 294, 299, 88 P.3d 390 (2004). Blackburn, at an administrative DOC hearing, was reclassified to serve the remainder of his sentence in prison. His only opportunity for review of this reclassification decision *1093 was before a DOC appeals board. Because he has not "already had an opportunity to appeal to a disinterested judge," his burden is to show the restraint is unlawful for one of the reasons listed in RAP 16.4(c). In re Pers. Restraint of Grantham, 168 Wash.2d 204, 214, 227 P.3d 285 (2010).

A
¶ 5 The Fourteenth Amendment provides that "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law." Under Morrissey v. Brewer, 408 U.S. 471, 488-89, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), "the minimum requirements of due process" for a revocation of parole are a final hearing preceded by "written notice of the claimed violations of parole," as well as advance disclosure of the State's evidence, an "opportunity to be heard in person and to present witnesses and documentary evidence," "the right to confront and cross-examine adverse witnesses," a "`neutral and detached'" adjudicator, and a written statement by the fact finder of the evidence relied on and the reasons for the final decision. These due process requirements apply with equal force to a revocation of probation, Gagnon v. Scarpelli, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), and to the imposition of a sentence that had been suspended under the special sex offender sentencing alternative. State v. Dahl, 139 Wash.2d 678, 684, 990 P.2d 396 (1999). We think they also apply to a DOC reclassification of an offender serving a sentence in community custody. A person in community custody "can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482, 92 S.Ct. 2593. An end to this liberty is surely a "`grievous loss,'" and "the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment." Id.
¶ 6 In Morrissey, the Court did not describe with particularity what the substance of a notice should be, only that there be "written notice of the claimed violations." Id. at 489, 92 S.Ct. 2593. Elaborating on this requirement, we have said a Morrissey notice must "inform the offender of the specific violations alleged and the facts that the State will rely on to prove those violations."Dahl, 139 Wash.2d at 685, 990 P.2d 396. This is a straightforward task when the alleged violation is simple, such as a drug offender's failure to submit to urinalysis testing. But this is a more problematic endeavor when the condition of community custody is broadly stated as "obey all laws," given the sheer number of laws in this country. In this context, and with particular sensitivity to the gravity of the potential punishmentreclassification and imprisonmentwe must decide the level of specificity required to inform the offender of the violation alleged.
¶ 7 Although the Fourteenth Amendment does not establish a detailed "code of procedure," Morrissey, 408 U.S. at 488, 92 S.Ct. 2593, the contents of a notice must be sufficient to satisfy the core concerns of due process. Several such concerns are manifested here. First, when a potential sanction is the offender's return to total confinement, "many of the core values of unqualified liberty" are in jeopardy. Id. at 482, 92 S.Ct. 2593. Second, the offender needs enough information about the charges to prepare a meaningful defense. See Dahl, 139 Wash.2d at 684, 990 P.2d 396. Third, "[s]ociety has a stake in whatever may be the chance of restoring him to normal and useful life within the law." Morrissey, 408 U.S. at 484, 92 S.Ct. 2593. Fourth, "an effective but informal hearing" is necessary to ensure that DOC's "exercise of discretion will be informed by an accurate knowledge of the [offender's] behavior." Id. Finally, and most fundamentally, a government deprivation of liberty must abide by "prevailing notions of fundamental fairness." State v. Lord, 117 Wash.2d 829, 867, 822 P.2d 177 (1991).
¶ 8 With these concerns in mind, we note the dangers that could arise if a notice says too little about the law that the offender allegedly fails to obey. To begin with, an offender needs to know DOC's legal theory in order to prepare an adequate defense. Because laws vary so widely, the strategic choices that an offender makes in "present[ing] witnesses and documentary evidence" will necessarily be tied to the particular *1094 definition of the crime that he or she allegedly committed. Morrissey, 408 U.S. at 489, 92 S.Ct. 2593. In the absence of a vigorous defense against the allegations, the risk increases that a hearing officer will base a reclassification decision on inaccurate information about the offender's behavior. An innocent offender might be erroneously deprived of his conditional liberty and taken out of rehabilitative community custody programs.
¶ 9 A risk also arises that the hearing officer's factual findings will rest on the wrong statutory provision or that DOC could surprise the offender with a new legal theory at the hearing. In this case, for example, the hearing officer originally thought that the statute at issue was RCW 9A.46.020(1)(a)(iv)an unconstitutional provision that violates the First Amendment, State v. Williams, 144 Wash.2d 197, 210-11, 26 P.3d 890 (2001)rather than the constitutionally valid RCW 9A.46.020(1)(a)(ii). And courts in other jurisdictions have recognized the danger of a notice "deceiv[ing] the defendant into believing he was being charged with another offense." United States v. Havier, 155 F.3d 1090, 1093 (9th Cir.1998); see also State v. McCormick, 385 N.W.2d 121, 123 (S.D.1986) (holding due process violated where a notice of a probation revocation hearing alleged the probationer committed burglary, but the subsequent revocation findings were based on other violations). An offender whose liberty is in jeopardy should not be misled, subjected to guessing games, or asked to hit a moving target. The realization of these dangers would harm the individual's protected interest in liberty and society's interest in rehabilitating law-abiding offenders.
¶ 10 We hold that for DOC to lawfully reclassify an offender for imprisonment for a violation of an "obey all laws" condition of community custody, the notice must allege the facts and legal elements that DOC would have to prove to show an offender did not obey all laws. "[N]otice of the specific statute guarantees the fairest opportunity for the defendant to isolate the various elements of the crime and present facts in his defense." Havier, 155 F.3d at 1094. Although a notice may state the elements, a citation to the statute suffices if the statute includes all of the elements. If the statute does not include all of the elements, the notice must indicate the nonstatutory elements that would render the offender's conduct unlawful.

B
¶ 11 The notice given to Blackburn did not meet this standard. DOC's notice to Blackburn alleged his violation was a "[F]AILURE TO OBEY ALL LAWS," and alleged this violation was based on the fact that Blackburn "THREATEN[ED] TO KILL SHELLY BLACKBURN ON OR ABOUT 5/14/08." Suppl. Br. of Resp't, App. D at 1. But the notice did not state which law he failed to obey, and saying that a person threatened to kill someone does not reflect the elements of the harassment statute. In DOC's notice, RCW 9A.46.020 was tucked in a list of the documentary evidence that DOC intended to present. With RCW 9A.46.020 couched as documentary evidence, rather than the law that Blackburn failed to obey, several risks were unnecessarily created. Because DOC was left free to pursue alternative legal theories at the hearing, the hearing officer could mistakenly base, and did base, his decision on an unconstitutional subsection. Further, Blackburn might have been uncertain about the law for which he had to prepare a defense. There was a risk that an offender who did not breach his community custody conditions was sent back to total confinement. The notice standard we have described insures against such risks, and by failing to meet the standard, DOC committed constitutional error.[2]

III. CONCLUSION
¶ 12 Blackburn raised several other issues in his petition, but we do not address them. Because DOC's notice to Blackburn did not comport with due process, he is entitled to relief under RAP 16.4(c). Accordingly, we grant Blackburn's personal restraint petition *1095 and vacate the disposition of the DOC hearing officer.
WE CONCUR: BARBARA A. MADSEN, Chief Justice, CHARLES W. JOHNSON, GERRY L. ALEXANDER, RICHARD B. SANDERS, TOM CHAMBERS, SUSAN OWENS, JAMES M. JOHNSON, and DEBRA L. STEPHENS, Justices.
NOTES
[1] Blackburn argues the sentencing court did not have the statutory authority to impose this condition, and even if it did, he claims that the condition violates due process. We do not address his arguments, given our decision on the notice issue.
[2] DOC does not argue that harmless error analysis applies or that Blackburn was required to establish that the notice flaw resulted in prejudice.