IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint Petition of | ) ) ) ) | No. 82506-2-I |
| PETER ANSELL, | ) ) | UNPUBLISHED OPINION |
| Petitioner. | ) ) ) | |

VERELLEN, J. — Peter Ansell filed this personal restraint petition to challenge eight of the community custody conditions imposed by the Indeterminate Sentence Review Board (ISRB) following his release from prison. Ansell argues three conditions should be stricken as unrelated to his crimes, four should be stricken or modified due to unconstitutional vagueness, and one geographic restriction should be modified.

Under Matter of Winton,[1] conditions of community custody imposed by the ISRB must be crime-related, meaning that they must bear a reasonable relation to the circumstances of the crime, the offender's risk of reoffense, and public safety. Because the ISRB concedes marijuana possession is unrelated to Ansell's convictions, the limitations on use, possession, or proximity to marijuana (condition D) must be stricken. However, limitations on random drug testing (condition E)

_____

[1] 196 Wn.2d 270, 474 P.3d 532 (2020).

and monitoring of internet use (condition H) are crime-related because they are necessary to monitor and enforce valid conditions.

A community custody condition is vague when it does not provide sufficiently ascertainable standards to let a reasonable person know which conduct is prohibited. Although a limitation on "sexually explicit materials" (condition G) is not inherently vague, it must be modified because the condition includes an overbroad definition of "sexually explicit materials" that invites subjective enforcement. And because conditions limiting "dating" (condition N) and "not form[ing] relationships with persons/families with minor children" (condition O) fail to provide objective guidance to avoid arbitrary enforcement, they must be stricken or modified. The limitation upon entering places where children congregate (condition L) is not vague.

The ISRB did not abuse its discretion when determining the size of the geographic restriction imposed in condition B. But the condition lacks a defined process for determining when an exception is appropriate, enabling arbitrary enforcement. On remand, the ISRB must craft exceptions with consistent, ascertainable standards that can be applied on a case-by-case basis.

Therefore, we grant the petition in part, dismiss the petition in part, and direct the ISRB to strike, revise, or replace specific conditions consistent with this opinion.

FACTS

In 2009, Ansell pleaded guilty to three counts of first degree child molestation for offenses committed against three young girls.[2] He was sentenced to a minimum term of 130 months with a maximum term of life on each count, running concurrently. The court also imposed a lifetime no contact order to protect the victims and their families. Ansell was released to community custody in July of 2020, and the ISRB imposed fifteen additional conditions of community custody due to his status as a sex offender. In April of 2021, Ansell filed this personal restraint petition challenging eight of the fifteen conditions.

ANALYSIS

To obtain relief through a personal restraint petition where, as here, no prior judicial review has occurred, a petitioner must show "'that he is restrained under RAP 16.4(b) and that the restraint is unlawful under RAP 16.4(c).'"[3] A petitioner subject to conditions of community custody as a result of a criminal proceeding is restrained for purposes of RAP 16.4(b). Thus, to be entitled to relief, Ansell must show a challenged condition is unlawful because it violates state law or a constitutional right.[4]

---

[2] State v. Ansell, noted at 163 Wn. App. 1026, 2011 WL 4012382, at *1.

[3] In re Pers. Restraint of Blackburn, 168 Wn.2d 881, 884-85, 232 P.3d 1091 (2010) (quoting In re Pers. Restraint of Isadore, 151 Wn.2d 294, 299, 88 P.3d 390 (2004)).

[4] Matter of Williams, 198 Wn.2d 342, 352, 496 P.3d 289 (2021) (citing In re Pers. Restraint of Gentry, 170 Wn.2d 711, 715, 245 P.3d 766 (2010)); RAP 16.4(c)(6).

A petitioner must prove an unlawful restraint by a preponderance of the evidence,[5] offering "[f]actual evidence, rather than conclusory allegations."[6] "Speculation, conjecture, and inadmissible hearsay [are] insufficient to warrant relief."[7]

We review community custody conditions imposed by the ISRB for abuse of discretion, and we review whether the ISRB had the authority to impose a particular condition de novo as a question of law.[8] The ISRB abuses its discretion if its decision was based on untenable grounds or made for untenable reasons.[9]

I. Challenges for Crime Relatedness

Ansell argues the ISRB abused its discretion by imposing three conditions that were unauthorized because they were not related to his crimes. The ISRB contends his "argument is without merit because conditions imposed by the [ISRB] need not be crime-related to be valid."[10]

---

[5] Id. (citing In re Pers. Restraint of Cook, 114 Wn.2d 802, 813-14, 792 P.2d 506 (1990)).

[6] Id. (citing In re Pers. Restraint of Gronquist, 138 Wn.2d 388, 396, 978 P.2d 1083 (1999)).

[7] Id. (citing Gronquist, 138 Wn.2d at 396). To the extent the record contains hearsay evidence, neither party has objected to it.

[8] Matter of Winton, 196 Wn.2d 270, 274, 474 P.3d 532 (2020) (citing In re Pers. Restraint of Coats, 173 Wn.2d 123, 133, 267 P.3d 324 (2011); State v. Armendariz, 160 Wn.2d 106, 110, 156 P.3d 201 (2007)).

[9] State v. Johnson, 197 Wn.2d 740, 744, 487 P.3d 893 (2021) (quoting State v. Vy Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)).

[10] Resp't's Br. at 7.

In Matter of Winton, our Supreme Court considered the ISRB's authority to impose conditions of community custody.[11]  The court began by examining "the statutory authority defining the ISRB's discretion to impose community custody conditions."[12]  It concluded unanimously that "any community custody condition imposed by the ISRB, even those that implicate constitutional freedoms, must bear a reasonable relation to the circumstances of the crime, the offender's risk of reoffense, and public safety."[13]  Accordingly, when an individual challenges a community custody condition imposed by the ISRB, "the relevant inquiry is whether the imposed condition is 'crime-related,' meaning it is reasonably related to the crime, the offender's risk of reoffense, and the protection of public safety.  If the condition fails to meet these statutory requirements, it is manifestly unreasonable and should be removed."[14]  Contrary to the ISRB's belief that Winton "does not at all require" that community custody conditions be crime-related,[15] the Supreme Court held otherwise, and we are bound by its decision.[16]

---

[11] 196 Wn.2d at 272.

[12] Id. at 276.

[13] Id. (emphasis added); see id. at 283 (agreeing with the majority that community custody conditions must be crime-related) (Gordon McCloud, J., concurring).

[14] Id. at 278 (citing RCW 9.94A.702(10)(c)(i-iii); RCW 9.95.0001(2)).

[15] Resp't's Br. at 11.

[16] State v. Rogers, 17 Wn. App. 2d 466, 476, 487 P.3d 177 (2021) (citing State v. Gore, 101 Wn.2d 481, 487, 681 P.2d 227 (1984); State v. Mandefero, 14 Wn. App. 2d 825, 837, 473 P.3d 1239 (2020)).

Ansell contends condition D is not crime-related and must be stricken. Condition D prohibits him from "us[ing], possess[ing], or control[ing] any Marijuana/THC or enter[ing] any establishments whose primary purpose is the sale of Marijuana/THC."[17] The ISRB concedes no evidence links marijuana use to Ansell's convictions. Because this restriction is not crime-related, it must be stricken.[18]

Ansell argues condition E, which requires random drug monitoring, is not crime-related. The ISRB argues it is authorized to impose conditions required to monitor compliance.

Under RCW 9.94A.030(10), a condition is "crime-related" when it imposes "affirmative acts necessary to monitor compliance" with valid community custody conditions.[19] Ansell has not challenged condition C, which prohibits him from use

---

[17] Resp't's Br., Attachment B, at 2.

[18] Winton, 196 Wn.2d at 278. The ISRB argues this condition is also authorized by the requirement that Ansell "obey all laws." Resp't's Br. at 13. This argument is not compelling because it would obviate the requirement that an individual receive notice of their specific conditions of community custody. See Blackburn, 168 Wn.2d at 885-87 (holding a condition requiring an offender to "obey all laws" was insufficiently definite to allow enforcement without additional notice). The ISRB also argues unchallenged condition C, which prohibits possession of "any . . . controlled substance . . . without a valid prescription," Resp't's Br., Attachment B, at 2, authorizes condition D. But, even if crime-related, condition C is intended to cover different conduct because a person under ISRB supervision can be prohibited from possessing or using marijuana regardless of whether they have a valid prescription. RCW 69.51A.055.

[19] RCW 9.95.0001(3) (using RCW 9.94A.030 to define "crime-related prohibition"); see State v. Olsen, 189 Wn.2d 118, 130, 399 P.3d 1141 (2017) ("We have approved of monitoring tools used to enforce a valid parole or probation conditions.") (citing State v. Riles, 135 Wn.2d 326, 339, 342, 957 P.2d 655 (1998)).

of "any . . . controlled substance . . . without a valid prescription."[20]  Although Ansell argues random drug screening is unnecessary because the ISRB can already require random polygraphs to enforce condition C, he cites no authority for the proposition that the ISRB's decision to use more than one monitoring tool is, in itself, an abuse of discretion.  Because affirmative requirements are crime-related conditions of community custody when required to monitor compliance with valid conditions, the ISRB did not abuse its discretion by imposing random drug testing to monitor compliance with condition C.

Ansell argues condition H, which requires an internet monitoring program, is not crime-related and must be stricken.  Although the ISRB concedes internet use is not connected to Ansell's convictions, it argues this condition is, like the random drug testing, authorized as a crime-related monitoring condition.  Condition G prohibits Ansell from "possess[ing] or access[ing] sexually explicit materials."[21]  Ansell does not argue condition G is not crime-related, although he challenges it on due process grounds, as discussed below.  Ansell fails to show the ISRB abused its discretion by choosing to monitor and enforce a valid prohibition on accessing sexually explicit materials using both internet monitoring and random polygraph examinations.[22]

---

[20] Resp't's Br., Attachment B, at 2.

[21] Id.

[22] Because we uphold the prohibition in condition G, requiring only that its definition be clarified to avoid overbreadth and arbitrary enforcement, condition H remains valid.

## II. Challenges for Vagueness

Ansell challenges four conditions of community custody as unconstitutionally vague. Imposition of an unconstitutional condition is an abuse of discretion.[23]

Due process protections apply to conditions of community custody.[24] Both the 14th Amendment and article I, section 3 of the state constitution require "'fair warning of proscribed conduct.'"[25] A community custody condition is unconstitutionally vague when "(1) it does not sufficiently define the proscribed conduct so an ordinary person can understand the prohibition or (2) it does not provide sufficiently ascertainable standards to protect against arbitrary enforcement."[26] It "will be void if it 'may authorize and even encourage arbitrary and discriminatory enforcement.'"[27]

A community custody condition "implicating First Amendment speech must be narrowly tailored to further the State's legitimate interest"[28] and "demands a

---

[23] State v. Padilla, 190 Wn.2d 672, 677, 416 P.3d 712 (2018) (citing State v. Irwin, 191 Wn. App. 644, 652, 364 P.3d 830 (2015)).

[24] Blackburn, 168 Wn.2d at 884.

[25] State v. Wallmuller, 194 Wn.2d 234, 239, 449 P.3d 619 (2019) (quoting State v. Sanchez Valencia, 169 Wn.2d 782, 791, 239 P.3d 1059 (2010)).

[26] Padilla, 190 Wn.2d at 677 (citing State v. Bahl, 164 Wn.2d 739, 752-53, 193 P.3d 678 (2008)).

[27] Id. at 679 (quoting City of Chicago v. Morales, 527 U.S. 41, 56, 119 S. Ct. 1849, 144 L. Ed. 2d 67 (1999) (plurality opinion)).

[28] Id. at 678 (citing Grayned v. City of Rockford, 408 U.S. 104, 117, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972)).

greater degree of specificity."[29] "[A]n overbroad definition does not sufficiently put the offender on notice of what materials are prohibited and subjects him to possible arbitrary enforcement."[30] Thus, the "presence of a vague definition does not save the condition from a vagueness challenge if it also encompasses a broad range of speech protected by the First Amendment."[31]

Ansell challenges condition G, arguing it has invited arbitrary enforcement from his community corrections officer (CCO) as a result of its definition. Condition G prohibits Ansell from accessing or possessing "sexually explicit materials." It defines "sexually explicit materials" as

> any item reasonably deemed to be intended for sexual gratification and which displays, portrays, depicts, or describes: a) Nudity, which includes, but is not limited to, exposed/visible (in whole or part, including under or through translucent/thin materials providing intimate physical detail) genitals/genitalia, anus, buttocks and/or female/transgender breast nipple(s); b) A sex act which includes, but is not limited to, genital-genital, oral-genital, anal-genital, or oral-anal contact/penetration, genital or anal contact/penetration with an inanimate object, masturbation and/or bodily excretory behavior; c) Sadistic/masochistic abuse, bondage, bestiality, and/or participant who appears to be nonconsenting, dominated, degraded, humiliated, or in a submissive role, and/or a participant who appears to be acting in a forceful, threatening, dominating, or violent manner; and/or d) A minor, or a model or cartoon depicting a minor, in a sexually suggestive setting/pose/attire.[32]

Ansell does not contend the prohibition on possessing or accessing "sexually explicit materials" is inherently vague. Rather, he contends the condition is vague

---

[29] Id. (citing State v. Riley, 121 Wn.2d 22, 37-38, 846 P.2d 1365 (1993)).

[30] Id. at 674-75.

[31] Id. at 680-81 (citing Bahl, 164 Wn.2d at 756)).

[32] Resp't's Br., Attachment B, at 2.

as applied to him because the definition of "sexually explicit materials" is overbroad and requires the CCO's subjective judgment.

The ISRB cites to State v. Nguyen[33] to argue condition G is not vague. In Nguyen, a man convicted of child molestation and child rape challenged as vague a community custody condition prohibiting him from "possess[ing], us[ing], access[ing] or view[ing] any sexually explicit material . . . erotic materials . . . or any material depicting any person engaged in sexually explicit conduct" as defined, respectively, by RCW 9.68.130, 9.68.050, and 9.68A.011(4).[34] Our Supreme Court concluded the condition was not vague.[35] Relying on State v. Bahl,[36] it explained the phrase "sexually explicit material" is not inherently vague.[37] The court also noted that the statutory definitions cited in the condition supported its conclusion that "persons of ordinary intelligence can discern 'sexually explicit material' from works of art and anthropological significance."[38] But Nguyen is not directly applicable here because Ansell's challenge is to the definition of "sexually explicit materials" as applied by his CCO.

In State v. Padilla, a defendant convicted of communicating with a minor for immoral purposes was prohibited from possessing or accessing "pornographic

---

[33] 191 Wn.2d 671, 425 P.3d 847 (2018).

[34] Id. at 676, 679.

[35] Id. at 681.

[36] 164 Wn.2d 739, 760, 193 P.3d 678 (2008).

[37] Nguyen, 191 Wn.2d at 680.

[38] Id. at 680-81.

material," which was defined as "images of sexual intercourse, simulated or real, masturbation, or the display of intimate body parts," and he challenged the definition as vague.[39] Our Supreme Court agreed.[40] The court explained the definition "would unnecessarily encompass movies and television shows not created for the sole purpose of sexual gratification . . . impermissibly extend[ing] to a variety of works of arts, books, advertisements, movies, and television shows."[41] As a result, it failed to provide adequate notice of prohibited conduct, both preventing the defendant from modifying his behavior and inviting arbitrary enforcement.[42]

The circumstances here are like Padilla rather than Nguyen. The ISRB argues the breadth of the condition is saved by the requirement that only materials "intended for sexual gratification" are prohibited.[43] But, as in Padilla, Ansell challenges the definition for not providing adequate notice and for inviting arbitrary enforcement. And, like Padilla, at least some portion of the definition is broad enough to encompass materials not created for a sexual purpose, such as video recordings of ballet performances and some athletic activities or descriptions of nudity or sex in any book. The definition here invites a subjective interpretation by

---

[39] 190 Wn.2d 672, 674, 676, 416 P.3d 712 (2018).

[40] Id. at 675.

[41] Id. at 681 (citing Jenkins v. Georgia, 418 U.S. 153, 161, 94 S. Ct. 2750, 41 L. Ed. 2d 642 (1974)).

[42] Id. at 682.

[43] Resp't's Br. at 28-29.

encompassing materials protected under the First Amendment and providing no guidance of whether those materials were "intended for sexual gratification." As the Padilla court explained, the "presence of a vague definition" can support a due process challenge, even if, as here, the prohibition itself is not inherently vague.[44] When the ISRB chose to broadly define "sexually explicit materials" and declined to provide enforcement criteria, it infringed Ansell's First Amendment rights and risked subjecting him to arbitrary enforcement."[45]

Indeed, the record here illustrates how condition G impermissibly invited arbitrary enforcement. In September 2020, Ansell's CCO wrote that he "received hits on [Ansell's] monitoring software regarding [Y]ou[T]ube videos which are potential violations."[46] After watching the videos, Ansell's CCO wrote that Ansell violated condition G for watching "'risqué' videos on [Y]ou[T]ube for sexual gratification," even though "the videos in question were not pornographic in nature, but they were suggestive."[47] By delegating the authority to determine the prohibition's boundaries to an individual CCO, condition G created "'a real danger that the prohibition . . . translate[d] to a prohibition on whatever the officer finds personally titillating.'"[48] Because condition G has an overbroad definition of "sexually explicit material" that invites the CCO's subjective perspective when

---

[44] Padilla, 190 Wn.2d at 680-81 (citing Bahl, 164 Wn.2d at 756)).

[45] Id. at 674-75.

[46] Reply Br., Attachment A, at 5.

[47] Id. at 4.

[48] Padilla, 190 Wn.2d at 682 (quoting Bahl, 164 Wn.2d at 755).

enforcing it, it implicates Ansell's due process and First Amendment rights.[49] And because imposing an unconstitutional condition of community custody is always an abuse of discretion,[50] the definition of "sexually explicit material" in condition G must be rewritten by the ISRB to provide sufficient guidance and must be narrowly tailored to meet the ISRB's legitimate interests.[51]

Ansell argues condition L is vaguely defined and has resulted in arbitrary enforcement. Condition L states that Ansell "must not enter places where minor children tend to congregate, including but not limited to shopping malls, schools, playgrounds, parks, public schools, skating rinks, and video arcades[,] without prior approval from your CCO."[52]

Ansell contends the word "park" has been rendered vague by the use of "playground" because "park" could be understood as referring to any type of park as opposed to one intended for children.[53] The ISRB argues "park" is not vague because "'parks' is one illustrative example among many" and Ansell "reads 'park' in isolation."[54] We agree with the ISRB. As in State v. Wallmuller,[55] the specific prohibition is against entering "places where minor children tend to congregate,"

---

[49] Id. at 679 (quoting Morales, 527 U.S. at 56).

[50] Blackburn, 168 Wn.2d at 884.

[51] Padilla, 190 Wn.2d at 678 (citing Grayned, 408 U.S. at 109).

[52] Resp't's Br., Attachment B, at 3.

[53] Personal Restraint Petition (PRP) at 14-15.

[54] Resp't's Br. at 30.

[55] 194 Wn.2d 234, 449 P.3d 619 (2019).

and "such a phrase is sufficiently specific when modified by a nonexclusive list of places illustrating its scope."[56] The "vagueness doctrine does not require impossible precision"[57] and demands only "'the kind of notice that will enable ordinary people to understand what conduct it prohibits.'"[58] Because condition L provides sufficient guidance, the ISRB did not abuse its discretion by imposing this condition.[59]

Ansell challenges condition N, which requires that he "not date individuals who have minor children" without prior approval from his CCO and the ISRB.[60] He contends the word "date" is vague because "knowing the boundaries of this condition, as it is written, is impossible."[61] "Date" is undefined, and the condition does not provide examples. The ISRB argues that "date" should be defined as "a

---

[56] Id. at 243 (citing State v. Johnson, 4 Wn. App. 2d 352, 360, 421 P.3d 969 (2018)).

[57] Id. at 244-45.

[58] Padilla, 190 Wn.2d at 679 (quoting Morales, 527 U.S. at 56).

[59] We note that the ISRB and Ansell's CCO disagree about whether condition L encompasses state parks. See Resp't's Br. at 30 (arguing condition L does not apply to "'national parks' or 'state parks' . . . as 'minor children' do not 'tend to congregate' there"); Reply Br., Attachment G (safety plan required by Ansell's CCO regarding Ansell receiving permission to visit state parks). Because remand is required for the other conditions, the ISRB may take that opportunity to resolve this tension with more precise language in the condition regarding parks.

[60] Resp't's Br., Attachment B, at 3.

[61] PRP at 15-16.

14

means of establishing contact with an adult who 'has' minor children."[62]

Restrictions on the freedom to associate implicate the First Amendment.[63]

In Nguyen, which considered the consolidated appeals of two defendants, a woman convicted of second degree child molestation brought a vagueness challenge against a condition of community custody requiring her to inform her CCO of any "dating relationship."[64]  Our Supreme Court upheld the condition.[65] The court explained "A 'date' is defined as 'an appointment between two persons' for 'the mutual enjoyment of some form of social activity,' 'an occasion (as an evening) of social activity arranged in advance between two persons.'"[66]  A "relationship" is "'a state of affairs existing between those persons having relations.'"[67]  And, the legislature defined "dating relationship" in RCW 26.50.010(2) using factors a court may consider to identify a "'social relationship of a romantic nature.'"[68]  From these definitions, the court concluded "dating relationship" was not vague because "a reasonable person, in considering the

---

[62] Resp't's Br. at 32.

[63] Matter of Brettell, 6 Wn. App. 2d 161, 169, 430 P.3d 677 (2018).

[64] Nguyen, 191 Wn.2d at 677, 681.

[65] Id. at 683.

[66] Id. at 682 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 576 (2002)).

[67] Id. (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1916 (2002)).

[68] Id. (quoting RCW 26.50.010(2)).

factors, would not conclude that individuals who are 'just friends' or engage in a single social activity with one another are in a 'dating relationship.'"[69]

Using the definition of "date" from Nguyen, Ansell has, absent prior authorization from his CCO and the ISRB, been prohibited from having an occasion of social activity arranged in advance with another person when the purpose of the activity is their mutual enjoyment.[70] Unlike Nguyen, condition N does not require that Ansell be in a romantic relationship with the person on the "date." The condition has the potential to prohibit Ansell from a wide range of planned social engagements with friends, family, or spiritual leaders regardless of whether the lone "date" could endanger a minor. It is also unclear whether a date for professional networking would be prohibited by this condition when part of the purpose of such a "date" is the enjoyment of both parties. Unlike the limitation upon a "dating relationship" upheld in Nguyen, condition N fails to provide a "sufficiently definite" standard that is easily understood by an ordinary person. Therefore, it is vague, and remand is required for it to be stricken or clarified.[71]

Ansell challenges condition O, which requires that he "not form relationships with persons/families with minor children without first disclosing your sex offender status and having this relationship approved by your CCO."[72] Ansell

---

[69] Id. at 682, 683.

[70] See id. at 682 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 576 (2002)).

[71] See id. at 681 (citing City of Spokane v. Douglass, 115 Wn.2d 171, 179, 795 P.2d 693 (1990)).

[72] Resp't's Br, Attachment B, at 3.

argues that condition O, like condition N, is too unclear to let him modify his behavior by predicting when and what types of relationships require approval. We agree. Like condition N, and unlike the "dating relationship" condition upheld in Nguyen, condition O provides no guidance about when routine, friendly interactions between Ansell and a person or family with minor children slips from a mere passing acquaintance into a "relationship." Indeed, an ordinary person could easily regard routine neighborliness as forming a relationship. Although "a subjective element in a [community custody] condition may be sufficiently specific if tethered to objective criteria,"[73] condition O provides none. Because condition O fails to provide ascertainable standards, it is unconstitutionally vague.

On remand, the ISRB must clarify community custody condition G and must strike or clarify conditions N and O to provide ascertainable standards and avoid arbitrary enforcement.[74]

III. Geographic Limitation

Ansell challenges community custody condition B, which imposes geographic and travel limitations, arguing it must be revised to "ensure a functioning exception process."[75] Condition B prohibits Ansell from entering the

---

[73] United States v. Reeves, 591 F.3d 77, 81 (2d Cir. 2010); accord Nguyen, 191 Wn.2d at 683 (upholding a condition pairing "highly subjective qualifiers" with "an objective standard").

[74] Ansell argues the ISRB should follow his therapist's recommendations to modify his community custody conditions, but he cites no authority showing the ISRB must consider them. The ISRB has the discretion to craft particular conditions. Winton, 196 Wn.2d at 274.

[75] Reply Br. at 22; PRP at 20-25. To the extent Ansell challenges the size of the exclusion zone, his arguments are not compelling. The ISRB has the

portion of the City of Seattle north of I-90 without prior written approval from his CCO and the ISRB. The ISRB contends condition B is appropriate as written because it is related to Ansell's crimes, community safety, and his risk of reoffense. It does not address why a formal exception process is unnecessary.

In Winton, the Supreme Court upheld a condition of community custody imposing a geographic exclusion.[76] The offender, who had been convicted of molesting two children in Clark County, was prohibited from travelling to the county unless he received permission from his CCO and the ISRB or did not intend to stop there.[77] Although the offender argued the requirement unduly burdened his right to travel because his daughter lived in northern Oregon, the court concluded the restriction did not do so.[78] The court explained the offender did not live or work in Clark County, did not "demonstrate any need to otherwise stop or engage in

---

discretion to determine the scope of geographic restriction so long as it is reasonably related to the crime, the offender's risk of reoffense, and public safety. Winton, 196 Wn.2d at 278-79. The record shows the ISRB drew these specific boundaries based upon where his victims live, work, attend school, and engage in other routine activities. Based on these facts and to minimize the risk of the victims encountering Ansell, the ISRB explains "it became difficult to construct the restricted area more narrowly." Ansell Resp. to ISRB Offer of Proof at 3. And Ansell concedes the existence of the exclusion zone "serves a valid purpose: to prevent inadvertent contact between Ansell and his victims." Ansell Resp. to ISRB Offer of Proof at 2. Although Ansell posits a narrower geographic limitation is possible, he does not show the ISRB abused its discretion when it determined the size of the exclusion zone.

[76] Winton, 196 Wn.2d at 279.

[77] Id. at 273.

[78] Id. at 278.

activity within Clark County," and did not show his travel requests had ever been denied.[79]

Ansell contends that, unlike Winton, the ISRB has enforced condition B arbitrarily, particularly affecting his ability to obtain medical care. The record supports his argument.

The exclusion zone includes many medical providers because it encompasses the University of Washington Medical Center, First Hill, Cherry Hill, and Capitol Hill. In September of 2020, Ansell notified his CCO that he needed a medical appointment at a hospital on Capitol Hill. In October, Ansell received the permit for the November appointment. After the November appointment, Ansell requested additional permits for more medical appointments in January. On January 4, 2021, Ansell received permits for two appointments on January 14 and 28. On January 27, Ansell's CCO approved permits for multiple medical appointments over the coming months, and he forwarded the permit requests to the ISRB. On February 10, 2021, the ISRB told the CCO:

> [T]he proctologist and dermatologist appointments would be doable since they are specialists and travel would be infrequent, [but] the [physical therapy] appointments should be outside of his exclusion zone due to the frequency. . . . [I]t would be best if [Ansell] didn't travel in the zone at all[,] as it would make things easier on him, you, [the] victim[s], as well as the Board and the [victim liaison]. . . . If he REALLY needs to go to these professionals in his exclusion zone[,] we can make some of them work, but not all of them.[80]

---

[79] Id.

[80] Ansell Resp. to ISRB Offer of Proof, Ex. 3.

The ISRB also explained the CCO could "kill the request" by "denying any of his requests[,] and they wouldn't be reviewed by the [ISRB]."[81] The next morning, Ansell's CCO emailed him to say that, based upon correspondence from the ISRB, he "will not be permitted to travel into his exclusion zone for any reason."[82] The CCO also stated that the ISRB "will not consider any further requests for medical appointments."[83] He explained the current permits "were issued prematurely" and had been rescinded.[84] In March, the CCO denied Ansell's request to travel inside the exclusion zone to receive a COVID-19 vaccination.

Ansell filed this personal restraint petition in April of 2021, and in May, his CCO "clarified to [him] that the previous communication about [the] passes that were rescinded were only relating to those specific requests."[85] In June, his CCO and the ISRB granted Ansell a permit to enter the exclusion zone to visit a self-storage facility.

Unlike Winton, Ansell has demonstrated a need to enter the exclusion zone on some occasions, and the ISRB, for a period of time, encouraged the CCO to prohibit Ansell from travelling into his exclusion zone without exception and appeared to do so, at least in part, for its own convenience. And it decided to condition Ansell's ability to obtain medical care within the exclusion zone on the

---

[81] Id.

[82] Reply Br., Attachment A at 1.

[83] PRP at 22, Attachment F.

[84] Reply Br., Attachment A at 1.

[85] Resp't's Br., Attachment A at 1.

frequency of appointments rather than a medical provider's recommendations. This record shows the ISRB and his CCO arbitrarily denied some requests for exceptions. A community custody condition must "provide sufficiently ascertainable standards to protect against arbitrary enforcement,"[86] and condition B does not do so. Remand is required for the ISRB to modify the condition and develop ascertainable standards applicable on a case-by-case basis to allow travel into and through the exclusion zone.[87]

Therefore, we grant the petition in part, dismiss the petition in part, and direct the ISRB to strike, revise, or replace conditions consistent with this opinion.

_____

WE CONCUR:

_____    _____

---

[86] Padilla, 190 Wn.2d at 677 (citing Bahl, 164 Wn.2d at 752-53).

[87] Our focus on medical care does not mean other exceptions may not be justified.